Osvaldo Molina, peticionario recurrente, *v.* Gerineldo Barreto Pérez, recurrido, y Partido Popular Democrático y Samuel Cepeda, recurrente.

*Número:* O-80-713      *Resuelto:* 24 de diciembre de 1980

*Pedro Ortiz Álvarez, José Andreu García, Héctor Luis Acevedo, Guillermo Mojica Maldonado, José Ariel Nazario Álvarez, Carlos R. Ríos* y *Eudaldo Báez Galib,* abogados del Partido Popular Democrático y de Samuel Cepeda; *Héctor Ramos, Héctor Laffitte, Nelson Pagán Rodríguez, Héctor Reichard, Jr., Luis E. López Correa, Carlos Santos Correa, Alex González, Benny F. Cerezo* y *Antonio Montalvo Nazario,* abogados de Osvaldo Molina; *Miguel A. Pagán, Eunice Sein Llompart, José A. Carlo,* abogados de Gerineldo Barreto Pérez, Administrador General de Elecciones.

PER CURIAM: En el día de ayer emitimos la siguiente Resolución:

El recurso plantea si actuó correctamente la Junta Revisora Electoral al negarse a desestimar y asumir jurisdicción *original* en el caso Núm. JR-80-279, *Osvaldo Molina Vázquez* v. *Barreto Pérez,* consolidado con el JR-80-281, *Partido Popular Democrático y Cepeda* v. *Barreto Pérez.* Esencialmente dichos recursos intentan revisar la adjudicación efectuada por la Comisión Electoral de papeletas recusadas, que conteniendo una contradeclaración del elector fueron ya adjudicadas por *unanimidad* en el foro primario de la Comisión a base de unos acuerdos previamente establecidos, adoptados como parte del proceso de escrutinio general papeleta por papeleta realizado en torno al Distrito Representativo Núm. 35. Se alega que la intervención de la Junta conlleva que ésta sustituya a la Comisión como organismo facultado en ley para recibir evidencia oral y documental ex-

trínseca a la papeleta y documentos electorales, entrando en determinaciones y dirimiendo la veracidad de las declaraciones sobre papeletas recusadas, asunto que compete en primera instancia a la Comisión Electoral. *Art. 6.003.* Se aduce que al así actuar sin facultad en ley, la Junta Revisora consolida y mezcla acciones de diferentes naturalezas, y con ello posterga y demora la decisión de las apelaciones interpuestas oportunamente contra Cepeda en los casos JR-274, JR-275, JR-276, JR-277, JR-278, JR-280, JR-282, JR-283 y JR-284 sobre corrección de errores y rectificación de contabilidad, los cuales debe conocer con la prontitud que permita un cómputo final correcto por la Comisión y la certificación del candidato electo, dejando a salvo para el candidato perdidoso, cuando proceda, la acción de impugnación provista en el Art. 6.015 de la Ley Electoral que en el orden procesal es posterior, y no anterior, a la certificación por la Comisión del candidato que obtuvo el mayor número de votos.

En consideración a lo antes expuesto, se concede a los recurridos [*sic*] Osvaldo Molina, Samuel Cepeda y Partido Popular Democrático y al Administrador General de Elecciones un plazo hasta las 12:00 M. del miércoles 24 de diciembre de 1980 para mostrar causa por la que no deba desestimarse por falta de jurisdicción y prematuridad las acciones por ellos promovidas ante la Junta Revisora Electoral (JR-80-279 y JR-80-281) y ordenar a dicho organismo que en o antes del viernes 26 de diciembre de 1980 dilucide y resuelva, con máxima diligencia, la validez de las papeletas envueltas en las apelaciones de Samuel Cepeda (JR-80-274, 275, 276, 277, 278, 280, 282, 283 y 284) que no fueron adjudicadas por unanimidad por la Comisión Electoral.

En auxilio de nuestra jurisdicción este Tribunal paraliza los procedimientos en los recursos de Osvaldo Molina y Samuel Cepeda ante la Junta Revisora (JR-80-279 y JR-80-281) por el tiempo que dure la decisión de este recurso. Se ordena que dicha Junta y la Comisión se abstengan de certificar candidato alguno por el Distrito Representativo Núm. 35 hasta que recaiga decisión final y firme en los recursos JR-80-274, JR-80-275, JR-80-276, JR-80-277, JR-80-278, JR-80-280, JR-80-282, JR-80-283 y JR-80-284.

Oportunamente compareció el recurrido Molina.

No habiéndose producido certificación por la Comisión Electoral sobre elección de candidato del Distrito Representa-

tivo Núm. 35, prima facie, la Junta Revisora carecería de jurisdicción para entender en las acciones de Osvaldo Molina y Samuel Cepeda (JR-80-279 y JR-80-281) incoadas ante dicho foro. Nos explicamos.

En el esquema dispuesto por la Ley Electoral, los Arts. 5.034 y 6.003 regulan todo lo concerniente al proceso de recusación de papeletas y remiten su adjudicación a la Comisión Estatal de Elecciones. El primero de esos artículos establece el procedimiento a seguirse el día de las elecciones y el segundo preceptúa las reglas para la posterior adjudicación de las papeletas así recusadas. De su lectura e interacción con las demás disposiciones de la ley relativas a la adjudicación de toda papeleta, percibimos que, como regla general, el concepto de "adjudicación" significa el examen de la papeleta, la constatación de los candidatos en ella votados y la contabilización del voto así emitido a favor de dichos candidatos. En contraste, en el caso de una papeleta recusada, el término adquiere una distinta significación. Así, una papeleta recusada constituye un ataque a la legalidad del voto, y su validez —total o parcial— dependerá entonces de la comprobación de la certeza de los fundamentos invocados para tal recusación. Es ineludible concluir, pues, que en cuanto a éstas, debe distinguirse entre la adjudicación del voto desde el punto de vista puramente formal o de contabilidad —a favor de quién fue votada la papeleta— y el punto de vista sustantivo o de fondo, esto es, si fue o no votada ilegalmente la papeleta por no reunir el elector todos los requisitos que le hubiesen habilitado como tal.

En virtud de esa diferencia y conceptualización advertimos que la adjudicación sustantiva o en su fondo de una papeleta recusada es un proceso por naturaleza distinto al trámite ordinario y normal seguido durante el escrutinio eleccionario. Exige la existencia de una mecánica de adjudicación plenaria que trasciende la faz de la papeleta, de índole adversativa, rodeada de las garantías mínimas del debido pro-

ceso de ley tales como notificación al elector, citación de testigos y desfile y apreciación de prueba, ante la Comisión Electoral o su examinador. Tal proceso ni esquema fue establecido por dicha Comisión que, como hemos visto, era el foro primario administrativo con jurisdicción, según la ley, para dilucidar en su fondo tales papeletas.

Lo expuesto no dispone del recurso. Como custodios y guardianes máximos de "los derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico", *P.P.D.* v. *Barreto Pérez*, 110 D.P.R. 376 (1980), no podemos abstraernos de la difícil situación que plantea la presente controversia. Como allí dijimos, "[e]l país está atravesando momentos de gran dificultad y tensión. En estas trabajosas circunstancias, es imprescindible que se actúe con serenidad y sensatez. Lo vital es que triunfe el pueblo entero de Puerto Rico; que no se reduzca la calidad de su democracia ni se mancille la limpieza de sus procesos electorales; que se respeten escrupulosamente nuestra Constitución y nuestras leyes. Hacemos un llamado al país para mantener en toda ocasión la máxima tranquilidad y mesura". Pág. 387.

Con esa perspectiva presente, la correcta determinación de cuál fue el candidato debidamente electo para ocupar el escaño correspondiente al Distrito Representativo Núm. 35 deviene como clara e incuestionable exigencia del derecho al voto de cada uno de los integrantes del cuerpo electoral de dicho distrito. Art. II, Sec. 2, Constitución del Estado Libre Asociado; Art. 2.001, inciso 2, de la Ley Electoral. Por otro lado, advertimos que el debido funcionamiento de la Rama Legislativa se verá cuando menos empañado y posiblemente detenido, mientras dure la incertidumbre en cuanto al resultado final y válido de la elección. En vista de lo anterior, así como de no haber provisto la Comisión los mecanismos adecuados para la adjudicación en su fondo de papeletas recusadas —como era su deber bajo las disposiciones del Art. 6.003 de la Ley Electoral y la Regla 62 del Reglamento de

Elecciones Generales de 1980— viéndose en consecuencia obligada la Junta Revisora a entrar a dilucidar la cuestión en lo que al Distrito Representativo Núm. 35 respecta, encontrándose, además, apreciablemente adelantados los procesos a esos fines iniciados, ante la manifiesta necesidad de proteger adecuadamente los derechos constitucionales de los electores, así como de viabilizar la pronta resolución de la situación surgida, el único remedio eficaz en las particulares circunstancias del presente caso lo constituye, a juicio nuestro, el reconocerle a la Junta Revisora, al amparo del inciso 1 del Art. 1.002 de la Ley Electoral, autoridad para finalizar la adjudicación en su fondo ya comenzada de las papeletas recusadas en el referido Distrito Representativo Núm. 35.

*Se dictará sentencia conforme lo expuesto.*