NICOLÁS NOGUERAS CARTAGENA, demandante y peticionario, *v.* ROBERTO REXACH BENÍTEZ y OTROS, demandados y recurridos.

*Número:* MD-96-4          *Resuelto:* 4 de octubre de 1996

*Raúl Santiago Meléndez,* abogado del peticionario.

DECISIÓN DEL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO referente a Moción Solicitando Recusación.

El 25 de abril de 1996, el Senado de Puerto Rico, mediante votación de veintitrés (23) a favor y seis (6) en con-

tra, acordó expulsar al Senador Nicolás Nogueras Cartagena de dicho Cuerpo. Su determinación se basó en un informe presentado por la Comisión de Ética del Senado, en el cual se le imputaban al Senador varios cargos, entre ellos, la comisión de conducta constitutiva de un delito grave al no rendir sus informes financieros tal como dispone la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico (en adelante Ley de Ética Gubernamental).[1]

El licenciado Nogueras Cartagena acudió ante nos el 1ro de mayo de 1996 mediante un recurso de *mandamus* dirigido contra varios funcionarios del Senado, pidiendo que declarásemos ilegal e inconstitucional su expulsión por los fundamentos señalados por el Senado alegando, en síntesis, que era necesario que hubiera una convicción previa por las faltas que le fueran imputadas y que el Senado no le garantizó un debido proceso de ley.

Completados los trámites procesales de rigor, este Tribunal, mediante sentencia emitida el 30 de agosto de 1996, concluyó que el *mandamus* es un recurso adecuado para dilucidar judicialmente la expulsión del Senador Nogueras Cartagena; una mayoría de los miembros del Tribunal, con excepción del Juez Asociado Señor Negrón García, concluyó que la Sec. 21 del Art. III de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, al referirse a "otros delitos graves", no significa que cualquier conducta consti-

---

[1] El Informe de la Comisión de Ética contenía las determinaciones siguientes:

"1. El Senador Nicolás Nogueras Cartagena violó la Ley 13 de 24 de junio de 1989, al no sólo omitir informar sus ingresos netos correspondientes al año 1993, sino al radicar tardíamente su declaración jurada conforme a esta ley en el año 1993.

"2. El Senador Nogueras incurrió en delito grave al violar la Ley de Ética Gubernamental al no radicar sus informes correspondientes al 1992, 1993 y 1994, conforme lo dicta la ley.

"3. El Senador Nogueras infringió el Artículo 4 inciso C y el Artículo 7 del Código de Etica.

"4. El Senador Nogueras incurrió en delito grave al violar la Ley de Contribuciones sobre Ingresos al no radicar sus planillas correspondientes a los años 1992 y 1993 conforme a la ley." Recurso, págs. 4–5.

tutiva de un delito grave sea motivo de residenciamiento o expulsión; todos los miembros del Tribunal concluyeron que el Senador Nogueras Cartagena fue acreedor de todas las garantías mínimas que requiere el derecho a un debido proceso de ley; en cuanto al fundamento utilizado para expulsar al Senador Nogueras Cartagena, una mayoría de este Tribunal concluyó que no es requisito para un proceso de expulsión el que haya habido una convicción previa, y una mayoría del Tribunal, compuesta por los Jueces Asociados Señor Negrón García, Señor Rebollo López, Señor Hernández Denton y el Juez que suscribe, concluyó que la imputación de violación al Art. 4.11(a)(1) de la Ley de Ética Gubernamental, 3 L.P.R.A. sec. 1841(a)(1), conducta constitutiva de delito grave, era razón suficiente y válida para sustentar la expulsión del Senador Nogueras Cartagena decretada por el Senado. Dicha sentencia fue notificada a las partes en la misma fecha en que fue emitida.

El 20 de septiembre de 1996 el licenciado Nogueras Cartagena presentó ante nos una "Moción de Reconsideración" de dicha Sentencia. El 25 de septiembre de 1996 el licenciado Nogueras Cartagena presentó la Moción de Recusación del Juez que suscribe, objeto de la presente decisión, a la cual anejó copia de una "Demanda" presentada por éste el 19 de septiembre de 1996 ante el Tribunal de Primera Instancia, Sala Superior de San Juan, contra el Hon. Pedro Rosselló González, Gobernador de Puerto Rico; el Hon. Pedro Pierluissi, Secretario de Justicia; Lcdo. Michael Corona Muñoz, Fiscal del Departamento de Justicia, y el Juez que suscribe, como ex Secretario de Estado, demandándose a cada uno de éstos tanto en su carácter oficial como personal, en el Caso Núm. KDP-986-1149 (503).

Mediante memorando del Juez Presidente de este Tribunal, Hon. José A. Andréu García, fechado el 27 de septiembre de 1996, éste expresó:

Conforme a la norma establecida por este Tribunal en *Noriega Rodríguez* v. *Gobernador*, 120 D.P.R. 267 (1988), tengo a

bien remitirle el expediente en el caso de epígrafe[2] para que atienda la "Moción Solicitando Recusación del Hon. Juez Asociado del Tribunal Supremo de Puerto Rico, señor don Baltasar Corrada del Río".

Una vez emita su decisión en este asunto, habremos de turnar el caso para la consideración por el Pleno de la moción de reconsideración que está pendiente.

A tenor con dicho requerimiento y vista la moción de recusación presentada por el licenciado Nogueras Cartagena, procedemos a su evaluación y consideración.

## I

El licenciado Nogueras Cartagena formula como alegaciones para fundamentar su moción de recusación, en síntesis, que el Juez suscribiente era parte integrante del Directorio Central del Partido Nuevo Progresista (P.N.P.); que mientras formaba parte de dicho Directorio, activamente solicitó la renuncia de éste a su puesto de Vicepresidente del Senado y Presidente de la Comisión de Trabajo; que durante el período de 1993 a 1995 el Juez suscribiente ocupó el puesto de Secretario de Estado nombrado por el Hon. Pedro Rosselló González, Gobernador de Puerto Rico, y confirmado por el Senado de Puerto Rico;[3] que ocupando las posiciones de miembro del Directorio del P.N.P. y la Secretaría de Estado, "intervino y terció en asuntos relacionados con el peticionario Nogueras Cartagena, tales como la llamada 'Gran Fuga', lo relacionado con la Villa Panamericana, Planillas Contributivas, e investigaciones sobre informes financieros del peticionario"; que el Juez suscribiente "intervino y terció en asuntos donde él y el licenciado Nogueras Cartagena fueron protagonistas antagónicos"; "asuntos donde el licenciado Nogueras Cartagena

---

[2] Caso Núm. MD-96-4, *Nogueras Cartagena v. Rexach Benítez.*

[3] El licenciado Nogueras Cartagena señala, igualmente, que el Juez suscribiente advino a integrar este Tribunal por designación del Gobernador de Puerto Rico, Hon. Pedro Rosselló González, y posterior confirmación del Senado en 1995.

mantuvo activa y públicamente oposición a los designios del Directorio del PNP y del Gobierno de Puerto Rico tales como la venta de las Navieras, la privatización del Fondo del Seguro del Estado y la Administración de Compensaciones Contra Accidentes (ACCA) [sic], la Corporación Azucarera, la huelga de la Federación y Asociación de Maestros de Puerto Rico, y las controversias con los integrantes del Gabinete de Gobierno Pedro Roselló González [sic], José Arsenio Torres y Manuel Díaz Saldaña".

Fundamenta el licenciado Nogueras Cartagena su moción de recusación, además, en las alegaciones contenidas en la "Demanda" presentada por él en el Caso Núm. KDP-986-1149 (503), veinte (20) días después de la Sentencia emitida por este Tribunal en el caso sobre la expulsión del licenciado Nogueras Cartagena por el Senado y un (1) día antes de presentar su moción de reconsideración. Las alegaciones contenidas en la referida demanda, copia de la cual fue anejada e incorporada a la moción de recusación,(4) son, en esencia, que "desde el mes de febrero de 1995 hasta el presente, los codemandados en su carácter oficial y personal realizaron actos u omisiones, culposas y/o negligentes, contra el demandante, involucrándolo públicamente y oficialmente, de manera viciosa, injustificada y sin evidencia o prueba que lo justificara, con el convencimiento [sic] previo y participación en unos sucesos acaecidos allá para el 7 de abril de 1991, denominados como La Gran Fuga, ocurrida en la Penitenciaría Estatal de Río Piedras en cuya fuga se escapó de prisión una persona conocida como Lázaro Díaz Fernández, quien una vez había sido cliente del abogado demandante".

El licenciado Nogueras Cartagena alega en dicha demanda que "[l]os co-demandados, a sabiendas de que carecían de pruebas en el antes referido asunto contra el abogado-senador-demandante, de forma negligente y/o dolosa

---

(4) Nos enteramos del texto de dicha demanda al ser ésta anejada a la Moción de Recusación, ya que a la fecha de hoy no hemos sido emplazados en dicho caso.

intencional, maliciosa y fraudulenta, comenzaron a emitir declaraciones públicas e investigar administrativamente al demandante, sin causa probable para ello y lo sometieron y refirieron sin cumplir con los criterios de ley, al Panel Sobre el Fiscal Especial Independiente en dos ocasiones: 23 de febrero de 1995 y el 5 de julio de 1995, imputándole posibles violaciones al Código Penal, alegando falsamente la existencia de causa probable para ello, bajo la Ley Núm. 2 del 23 de febrero de 1988, 3 L.P.R.A. 99 h, et seq."; "que tanto el 10 de abril de 1995 como el 20 de septiembre de 1995 el Panel sobre el Fiscal Especial Independiente determinó la inexistencia de causa probable alguna contra el demandante encontrando que los co-demandados no tenían causa alguna para recomendar el nombramiento de un fiscal especial independiente contra el demandante"; que los codemandados, "en sus gestiones gubernamentales, políticas y personales, conspiraron, coordinaron y cometieron actos u omisiones, contra el demandante, con el deliberado propósito, malicia e intención, o en la alternativa con negligencia, para afectar, o perjudicar, causar daño e inclusive castigar y perseguir políticamente y personalmente al demandante o con fines ajenos a su función pública, a sabiendas de que no existía causa probable alguna contra el demandante para que se le sometiera al Panel del Fiscal Especial Independiente y se le designara un Fiscal Especial Independiente, habiendo admitido en reuniones políticas y de gobierno que contrario a lo que expresaban públicamente y a sus actuaciones contra el demandante, no existía prueba alguna justificativa de ello"; el demandante alega, además, que "los co-demandados, Baltasar Corrada del Río, Pedro Rosselló González y Jorge [sic] R. Pierluissi, participaron activamente y decisionalmente en la conspiración contra el demandante para envolverle viciosamente e injustificadamente en el asunto de La Gran Fuga, referirle el asunto al Panel del Fiscal Independiente y pedir la designación de un Fiscal Independiente, a sabiendas de la

injusticia y falsedad de ello y de que no existía causa probable para una investigación y/o fueron responsables de negligencia u omisión por ello, en el desempeño de sus funciones públicas".

Señala el licenciado Nogueras Cartagena en su moción de recusación, además, que ya con anterioridad el Juez suscribiente se había inhibido en la intervención de querellas presentadas ante este Tribunal contra él.

Invoca el licenciado Nogueras Cartagena los Cánones XI y XII del Código de Ética Judicial, 4 L.P.R.A. Ap. IV-A, en la parte que él estima pertinente, de la forma siguiente:

> *Canon XI. Imparcialidad; conducta*
> El Juez no solamente ha de ser imparcial, sino que su conducta ha de excluir toda posible apariencia de que es susceptible de actuar a base de influencias de personas, grupos o partidos ....
> *Canon XII. Linitaciones; inhibición*
> El Juez no debe entender en procedimiento judicial alguno en ... cualesquiera de los casos siguientes:
> (a) Por tener prejuicio o parcialidad hacia cualesquiera de las personas o abogados que intervengan en el pleito o por haber prejuzgado el caso.
> (b) Por estar directa o indirectamente interesado en el resultado del caso.

Finalmente, el licenciado Nogueras Cartagena recalca que "la conducta objeto de revisión legislativa y judicial alegadamente proferida por el Lcdo. Nogueras gira en torno al período de 1989 a 1993 [sic], período en que el señor don Baltasar Corrada del Río ocupó las posiciones enunciadas en los acápites anteriores", por lo que considera debemos inhibirnos en el caso de autos.

## II

En relación con los planteamientos en que se fundamenta la moción de recusación, hacemos constar lo siguiente:

*Primero*: Que nunca hemos hecho declaración pública ni

privada que involucre al licenciado Nogueras Cartagena de forma alguna en unos sucesos acaecidos allá para el 7 de abril de 1991, denominados como "La Gran Fuga", alegadamente ocurrida en la Penitenciaría Estatal de Río Piedras, y en la cual alegadamente se escapó de una prisión una persona conocida como Lázaro Díaz Fernández, quien alegadamente había sido cliente del licenciado Nogueras Cartagena; que nunca como Secretario de Estado, ni en ninguna otra capacidad, ni personalmente, hemos recomendado, sugerido, instigado ni solicitado al Gobernador de Puerto Rico Hon. Pedro Rosselló González, o al Secretario de Justicia Hon. Pedro Pierluissi o al Fiscal Michael Corona, ni a cualquier otra persona, que investigaran administrativamente al licenciado Nogueras Cartagena ni que sometieran y refirieran caso alguno sobre el licenciado Nogueras Cartagena al Panel sobre el Fiscal Especial Independiente sobre posibles violaciones del licenciado Nogueras Cartagena al Código Penal en relación con La Gran Fuga antes mencionada ni en relación con ninguna otra posible violación al Código Penal de Puerto Rico; que como miembro del Directorio del P.N.P. hasta que renunciamos a éste efectivo el 15 de julio de 1995, nunca asistimos ni participamos en reunión alguna de dicho directorio en que se discutiera o se tomara acuerdo alguno imputándole al licenciado Nogueras Cartagena participación alguna en La Gran Fuga mencionada anteriormente.

*Segundo*: Que como miembro del Directorio del P.N.P. hasta el 15 de julio de 1995, nunca asistimos ni participamos en reunión alguna en que se solicitara al licenciado Nogueras Cartagena que renunciara a sus posiciones de Vicepresidente del Senado o Presidente de la Comisión de Trabajo y nunca solicitamos pública o privadamente que el licenciado Nogueras Cartagena renunciara a tales posiciones.

*Tercero*: Que nunca, entre 1993 y 1995, siendo Secretario de Estado y miembro del Directorio del P.N.P., intervi-

nimos ni terciamos en asuntos relacionados con el licenciado Nogueras Cartagena tales como La Gran Fuga, la Villa Panamericana, planillas contributivas e investigaciones sobre informes financieros de éste.

*Cuarto*: Que nunca hemos hecho expresiones públicas en contra del licenciado Nogueras Cartagena en torno a temas como la venta de las Navieras, la privatización del Fondo del Seguro del Estado, la Administración de Compensaciones por Accidentes de Automóviles (A.C.A.A.), la Corporación Azucarera, la huelga de la Federación y Asociación de Maestros de Puerto Rico, ni las controversias entre el licenciado Nogueras Cartagena y los miembros del gabinete del Gobernador Rosselló, los Srs. José Arsenio Torres y Manuel Díaz Saldaña; aunque en torno a estos temas el licenciado Nogueras Cartagena pudiera sostener posiciones contrarias a las del Gobernador Pedro Rosselló, ello es parte del derecho a disentir o diferir que a cada cual corresponde en una democracia.

A la luz de lo anterior, rechazamos firmemente las alegaciones en que se fundamenta la moción de recusación presentada en el caso de autos por el licenciado Nogueras Cartagena.

## III

La aseveración del licenciado Nogueras Cartagena en la moción de recusación de que ya con anterioridad el Juez suscribiente se había inhibido en la intervención de unas querellas presentadas ante este Tribunal contra dicho letrado, merece que nos expresemos sobre el particular.

El 30 de noviembre de 1994 la Contralor de Puerto Rico, Hon. Ileana Colón Carlo, presentó una queja ante este Tribunal contra el licenciado Nogueras Cartagena basada en una auditoría de las operaciones fiscales de la Oficina para la Liquidación de las Cuentas de la Corporación de Renovación Urbana y Vivienda (C.R.U.V.). Alegó que como parte

de los hallazgos de dicha auditoría, había determinado unas irregularidades relacionadas con la compraventa de los apartamentos de la Villa Panamericana, el pago indebido de honorarios de abogado al licenciado Nogueras Cartagena y el posible conflicto ético en que incurrió éste en la negociación con el Síndico de la C.R.U.V. El Secretario General de este Tribunal le envió una copia de la queja al licenciado Nogueras Cartagena para que se expresara en torno a ésta, quien oportunamente la contestó.(5)

El Juez suscribiente juramentó y tomó posesión de su cargo como Juez Asociado de este Tribunal el 18 de julio de 1995. Posteriormente, el 11 de agosto de 1995 fue traída a la consideración de una sesión de la Sala Especial de Verano de este Tribunal, integrada por el Juez Asociado Señor Rebollo López, como su Presidente, la Juez Asociada Señora Naveira de Rodón, el Juez Asociado Señor Fuster Berlingeri y el Juez suscribiente, una moción presentada por la quejosa Hon. Ileana Colón Carlo solicitando treinta (30) días adicionales para presentar sus observaciones y comentarios a un informe que había presentado el Procurador General ante este Tribunal en torno a la queja contra el licenciado Nogueras Cartagena. En dicha sesión de la Sala Especial de Verano de este Tribunal informamos que voluntariamente nos inhibíamos de intervenir en las quejas contra el licenciado Nogueras Cartagena en los Casos Núms. AB-94-144 y AB-93-49. La razón para nuestra inhibición voluntaria en dichos casos es que el licenciado Nogueras Cartagena y este Juez fuimos compañeros de estudios en la Universidad de Puerto Rico y en la Escuela de Derecho de dicha institución universitaria, y habiéndonos graduado en la misma clase de 1959 nos resultaba desagradable participar en un caso que pudiera conllevar potencialmente la imposición de alguna sanción disciplinaria

---

(5) Caso Núm. AB-94-144. Este caso fue consolidado subsiguientemente con el Caso Núm. AB-93-49.

como abogado a un ex compañero de estudios de derecho y amigo de mucho tiempo.

Dichos casos, a diferencia del caso de autos, no implican cuestiones constitucionales sustanciales, como la necesidad de interpretar por primera vez los poderes del Senado bajo la Constitución de Puerto Rico para expulsar a uno de sus miembros; las causas para tales expulsiones; la necesidad o no de una convicción previa de delito y la aplicación a dicho procedimiento de las garantías mínimas del debido proceso de ley. No nos inhibimos en el caso de autos dada la gran trascendencia de las cuestiones constitucionales implicadas que requerían de este Tribunal el ejercicio colegiado de su más alta función judicial: la interpretación final de la Ley Suprema de Puerto Rico, nuestra Constitución. No nos inhibimos porque no existía ni existe en nuestra conciencia en el caso de autos un ánimo prejuiciado en contra del licenciado Nogueras Cartagena. Nuestra inhibición en los casos de ciertas querellas disciplinarias contra el licenciado Nogueras Cartagena, lejos de reflejar un ánimo adverso a su persona, reflejan un ánimo de amistad y compañerismo hacia él. Propiamente, no representa una recusación, sino una abstención voluntaria que no configura una causal de inhabilidad. Se trata de una cuestión de delicadeza personal de no intervenir, como antes expresamos, en un procedimiento que pudiera conllevar una sanción disciplinaria como abogado al ex compañero de estudios de derecho. Sobre el particular, véase *Santiago v. Superintendente de la Policía*, 112 D.P.R. 205, 216-217 (1982), voto de inhibición del Juez Asociado Señor Negrón García.

## IV

La moción de recusación cita específicamente los Cánones XI y XII del Código de Ética Judicial, *supra*, en la parte

pertinente, según transcritos anteriormente en esta decisión.

El Canon XI del Código de Ética Judicial, *supra*, exige nuestra imparcialidad y requiere que nuestra conducta excluya toda posible apariencia de que uno es susceptible de actuar a base de influencias de personas, grupos o partidos.

En ocasión de juramentar el cargo como Juez Asociado de esta Curia el 18 de julio de 1995 expresamos que "[l]a función máxima de este alto foro incluye proteger al ciudadano del exceso de poder del estado y garantizar sus libertades y derechos inalienables a la luz de la Constitución; ... y particularmente, mantener el balance entre las tres ramas del gobierno interpretando y aplicando rectamente el derecho constitucional, estatutario, reglamentario o contractual. Función que requiere el ejercicio de absoluta imparcialidad, sabiduría y la virtud de la justicia". *Juramentación del Hon. J.A. Baltasar Corrada Del Río*, 138 D.P.R. XXIX, XLII (1995). Reiteramos estos criterios los cuales nos hemos autoimpuesto como miembro de este Tribunal. En este caso, como en todos los que hemos intervenido, nuestro comportamiento no ha permitido, ni en realidad ni en apariencia, que se piense que somos susceptibles de actuar a base de personas, grupos o partidos.

En el caso *Noriega Rodríguez v. Gobernador*, 120 D.P.R. 417 (1988), decisión del Juez Presidente Señor Pons Núñez referente a la Moción de Recusación del Juez Presidente, se solicitó la recusación del entonces Juez Presidente de este Tribunal en un caso en que se apeló de una sentencia dictada por el Tribunal Superior, Sala de San Juan, relacionado con la práctica de preparar carpetas a personas por razón de sus creencias políticas e ideológicas.

Se alegó en la moción de recusación en dicho caso que el Juez Presidente Señor Pons Núñez ocupó el cargo de Secretario de Estado en los años 1973 y 1974 y que existía una alta probabilidad o al menos se creaba una apariencia

razonable de que quienes ostentaron el cargo público de Secretario de Estado tenían o debieron tener conocimiento de los hechos pertinentes al caso, máxime cuando el Secretario de Estado ocupa interinamente el cargo de Gobernador. Se planteaba que el Juez Presidente, cuando ocupó el cargo de Secretario de Estado, conoció o debió conocer las posibles decisiones e investigaciones dirigidas a corregir o subsanar la referida práctica ilegal y la formulación de una política pública en torno a ella.[6]

En dicho caso, expresó el Juez Presidente Señor Pons Núñez lo siguiente:

> Ahora bien, como hemos indicado, la práctica que pudiera haber existido hace catorce años, cuya inconstitucionalidad ahora determinó el tribunal a quo, y de la cual se alega probabilidad o apariencia razonable de conocimiento o participación por parte de este Juez, no está ante la consideración de este Tribunal. *Apariencia no es sinónimo de espejismo.* (Énfasis en el original.) *Noriega Rodríguez v. Gobernador,* supra, pág. 421.

En el caso de autos no está ante nuestra consideración la alegada Gran Fuga ni entre los cargos formulados al licenciado Nogueras Cartagena por el Senado se encuentran los de La Gran Fuga. Aparte de que, según expresamos anteriormente, no tuvimos intervención en el asunto de La Gran Fuga, ese tampoco es el caso que está ante este Tribunal, sino el caso de la expulsión del licenciado Nogueras Cartagena por el Senado por otros fundamentos no relacionados.

El licenciado Nogueras Cartagena trae una serie de controversias públicas en las que él estuvo implicado mientras el Juez suscribiente fue Secretario de Estado y asume que, dado el caso que dichas controversias fueron coetáneas con nuestro desempeño de dicho cargo, se crea una apariencia de prejuicio de nuestra parte hacia él. Se trata de un espejismo; se ve nuestra presencia, como la de un fantasma, en la discusión de estos temas con el Gobernador o con el Se-

---

[6] Véase *Noriega Rodríguez v. Gobernador,* 120 D.P.R. 417, 418 (1988).

cretario de Justicia, o en el Directorio del P.N.P. Nada más lejos de la realidad, según anteriormente discutimos. Se aplica aquí lo expresado por el Juez Presidente Señor Pons Núñez:

[A] cosas que van unidas se les adscribe relación causal por el mero hecho de que van acompañadas una de la otra. Es este tipo de razonamiento el que en muchas ocasiones constituye fuente de supersticiones populares. "[S]e comete esta falacia cuando se confunde la concomitancia o la sucesión con la relación de causalidad: *cum* hoc, ergo *propter* hoc, o bien, *post* hoc, ergo *propter* hoc, o incluso la concomitancia y la identidad: *cum* hoc, ergo *ipsum* hoc." J.M. Lázaro, *El Pensar Lógico*, Río Piedras, Ed. Universitaria, 1969, pág. 258. Nos dice Lázaro que "[l]a acusación de culpabilidad por asociación es también ejemplo de esta falacia". Íd. *Noriega Rodríguez v. Gobernador*, supra, págs. 421–422.

El Canon XII del Código de Ética Judicial, *supra*, también invocado por el licenciado Nogueras Cartagena, dispone, en lo pertinente, que:

El Juez no debe entender en procedimiento judicial alguno en … cualesquiera de los casos siguientes: .
(a) Por tener prejuicio o parcialidad hacia cualesquiera de las personas o abogados que intervengan en el pleito o por haber prejuzgado el caso.
(b) Por estar directa o indirectamente interesado en el resultado del caso.

Nos sentimos en completa libertad, ánimo y disposición de juzgar el caso de autos con imparcialidad y objetividad. Como expresamos anteriormente, no tenemos prejuicio, pasión o parcialidad en contra del licenciado Nogueras Cartagena ni tampoco estamos interesados directa o indirectamente en el resultado de este caso. La expulsión o restitución del licenciado Nogueras Cartagena a su cargo en el Senado de Puerto Rico ni nos beneficia ni nos perjudica, y no existe interés, directo o indirecto, de nuestra parte en cuanto al resultado de este litigio.

Debemos señalar que este caso fue asignado en sus méritos por el Juez Presidente Señor Andréu García al Juez

Asociado Señor Hernández Denton para la preparación de una ponencia que sería circulada para su consideración por todos los Jueces. Una vez circulada la ponencia del Juez Asociado Señor Hernández Denton, nos unimos a dicha ponencia, que subsiguientemente se convirtió en la opinión de conformidad emitida por él. El Juez Asociado Señor Negrón García emitió una opinión en parte disidente y en parte concurrente, validando la expulsión del licenciado Nogueras Cartagena, aunque en forma más amplia. La Juez Asociada Señora Naveira de Rodón emitió una opinión disidente, a la cual se unieron el Juez Presidente Señor Andréu García y el Juez Asociado Señor Fuster Berlingeri, quien también emitió una opinión disidente por separado. ·

En *Noriega Rodríguez v. Gobernador*, 120 D.P.R. 267, 276 (1988), expresamos:

> ... [L]os Jueces de este Tribunal estamos sujetos a los preceptos constitucionales y a las normas legales y jurídicas establecidas. Nuestras decisiones requieren mayoría y la formación de una voluntad colectiva si han de ser las *opiniones del Tribunal*. Esto no ocurre así en los tribunales de instancia. El mecanismo colegiado asegura una justicia imparcial, serena restricción y celosa fiscalización de criterios. El recurso al disenso vehemente o al voto particular con sus modalidades, de amplia afirmación y utilización por este Tribunal, *garantizan que la decisión final certificada responda al legítimo criterio mayoritario informado, nunca a la situación individual o preferencias privadas de los componentes del Tribunal.* (Énfasis suplido y en el original.)

En dicho caso también expresamos:

> A diferencia del tribunal de primera instancia, la inhibición de un Juez de este Cuerpo no conlleva la corriente práctica de *sustitución* de magistrados que allí impera con relativa facilidad. Nuestras decisiones exigen quórum y votación mayoritaria, ya actuemos en pleno o divididos en salas. Ver Regla 6 de nuestro Reglamento, 4 L.P.R.A. Ap. I-A, y Art. V, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1. En todo caso, la exigencia de composición mínima y de mayoría absoluta para decretar la inconstitucionalidad de una ley, conlleva que la inhibición de

un Juez de este Tribunal revista interés excepcional. Ver *Sánchez Rodríguez* v. *López Jiménez*, 116 D.P.R. 172 (1985). (Énfasis en el original.) *Noriega Rodríguez v. Gobernador*, 120 D.P.R. 267, 275-276 (1988).

Aunque en el caso de autos no se declara la inconstitucionalidad de una ley, se interpreta por primera vez la Sec. 9 del Art. III de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, que establece el mecanismo para la expulsión de un miembro de la Legislatura, conjuntamente con la Sec. 21 del Art. III de la Constitución del Estado Libre Asociado, *supra*, y se cuestiona si el Senado actuó inconstitucionalmente al expulsar a uno de sus miembros. Ciertamente, se trata de cuestiones de excepcional importancia.

Para una discusión amplia del tema de recusación y descalificación de jueces en el ámbito estatal y federal de Estados Unidos, tanto de jueces de instancia como de jueces apelativos, incluso el Tribunal Supremo federal, hemos examinado la obra reciente de Richard E. Flamm.[7] Al igual que la norma establecida por este Tribunal en *Noriega Rodríguez v. Gobernador*, supra, en el Tribunal Supremo de Estados Unidos, un Tribunal colegiado compuesto por nueve (9) Jueces, cada Juez es el árbitro de su propia recusación o descalificación cuando se cuestiona su participación en un caso.[8]

En relación con la situación de un juez de instancia que es demandado por una parte que tiene pendiente ante dicho juez un caso sobre otro asunto, el tratadista Flamm, en la pág. 632 de la citada obra, expresa:

A judge may occasionally find herself involved in litigation with a person who is a party to an unrelated matter that is pending before her; when this circumstance arises, she might prefer to recuse herself from presiding over the unrelated

---

[7] R.E. Flamm, *Judicial Disqualification*, Boston, Ed. Little, Brown and Co., 1996.

[8] Flamm, *op. cit.*, págs. 850–855.

matter. However, absent a showing that the existence of litigation involving the judge and the party has resulted in that judge becoming biased against that party, the fact that the judge is involved in unrelated litigation with a party who is appearing before her, standing alone, has generally not been deemed to be conclusive as to the judge's bias in the proceeding in which she is acting as judge.

Consequently, as long as a judge believes that she is able to maintain the required detachment in the matter in which she is acting as judge, the fact that she may be involved in unrelated litigation with a party who is appearing before her is generally not considered to be disqualifying per se, whether the unrelated matter over which the judge is presiding is a civil case or a criminal one. This is particularly true where —as is frequently the case— the party that complains of the judge's ability to preside impartially is the party that filed the action that created the adversity, and that action is patently frivolous, or where the complaining party has demonstrated a pattern of filing lawsuits against those judges who have been assigned to his cases, and there is reason to believe that the party will also seek to disqualify any successor judge. (Escolios omitidos.) R.E. Flamm, *Judicial Disqualification*, Boston, Ed. Little, Brown and Co., 1996, págs. 632–633.

En el caso *U.S. v. Pryor*, 960 F.2d 1, 3 (1er Cir. 1992), el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito expresó:

… [I]t cannot be that an automatic recusal can be obtained by the simple act of suing the judge.

Refiriéndose al planteamiento de que un juez que es demandado por una parte en un caso distinto al que tiene ante su consideración tenga que inhibirse, la doctrina prevaleciente es contraria a tal resultado:

If tolerated, such a practice would not merely encourage judge-shopping and manipulation of the court, but would tend to delay or even prevent the trial of a case as well as severely hamper the orderly administration of judicial proceedings. Permitting judicial disqualification to be effected upon the mere filing of such an action would be apt to lead to chaos in the judicial system. (Escolios omitidos.) Flamm, *op. cit.*, págs. 635–636.

Este criterio es aún de mayor aplicación a un Juez de este Tribunal, que no tiene que presidir un juicio y emitir luego un fallo actuando por sí solo, como lo hace un juez de instancia, sino que participa con otros seis (6) Jueces en la decisión final del Tribunal como cuerpo colegiado.

Al no existir un estado de inhibición moral en nuestra conciencia[9] —según hemos discutido anteriormente— y dada la importancia de las cuestiones constitucionales planteadas en el caso de autos y nuestras responsabilidades como miembro de esta Curia, hemos decidido continuar participando en la consideración de este asunto. Denegamos la moción de recusación.

*Publíquese, únase a los autos y notifíquese a las partes.*

---

[9] *Cfr. Santiago v. Superintendente de la Policía*, 112 D.P.R. 205, 212 (1982); *Colegio de Abogados de P.R. v. Schneider*, 112 D.P.R. 540, 561 (1982); *Pizarro Ortega v. Tribunal Superior*, 100 D.P.R. 774, 776 (1972); *In re Andréu Ribas*, 81 D.P.R. 90, 124 (1959).