EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>     Recurrido<br><br><br>            v.<br><br>Juan Negrón Caldero<br><br>   Peticionario | Certiorari<br><br>2002 TSPR 95<br><br>157 DPR _____ |

Número del Caso: CC-1998-954


Fecha: 28/junio/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional II


Juez Ponente:
                    Hon. Carlos Soler Aquino


Abogado de la Parte Peticionaria:
                    Lcdo. Héctor A. Sostre Narvaez


Oficina del Procurador General:
                    Lcda. Rose Mary Corchado Lorent
                    Procuradora General Auxiliar



Materia: Infr. Art. 85 del Código Penal



  Este documento constituye un documento oficial del Tribunal Supremo
  que está sujeto a los cambios y correcciones del proceso de
  compilación y publicación oficial de las decisiones del Tribunal.
  Su distribución electrónica se hace como un servicio público a la
  comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido


         vs.                 CC-1998-954     Certiorari

Juan Negrón Caldero

    Peticionario

Opinión del Tribunal emitida por el Juez Presidente señor Andréu García


San Juan, Puerto Rico, a 28 de junio de 2002

I

El Ministerio Público presentó sendas acusaciones contra el señor Juan Negrón Caldero, imputándole la comisión del delito de homicidio[1] y violación al Artículo 8 de la Ley de Armas, 25 L.P.R.A. § 418 *et seq.*

Celebrado el juicio, el peticionario fue declarado culpable por el delito de homicidio y absuelto por la infracción al Artículo 8 de la Ley de Armas, *supra*.

El 13 de marzo de 1998, el Tribunal de Primera Instancia emitió una sentencia mixta, imponiéndole

---

[1] Art. 85 del Código Penal

al peticionario una pena de diez (10) años de reclusión, para cumplir seis (6) meses en prisión y el resto de la pena bajo el beneficio de una sentencia suspendida.

El Ministerio Público objetó la sentencia impuesta al peticionario, por entender que la Ley de Sentencias Suspendidas, Ley Núm. 259 del 3 de abril de 1946, según enmendada, 34 L.P.R.A. § 1026 *et seq.*, excluía del privilegio a los convictos que utilicen o intenten utilizar un arma de fuego en la comisión de un delito grave o su tentativa.

El tribunal sentenciador se mantuvo en su decisión arguyendo que el acusado no fue encontrado culpable por el cargo de infracción al Art. 8 de la Ley de Armas, *supra*, por lo que se le podía conceder el privilegio de la sentencia suspendida.

Inconforme, el Ministerio Público acudió al Tribunal de Circuito de Apelaciones. El foro apelativo a través de la sentencia del 24 de agosto de 1998, revocó la sentencia mixta recurrida. La oportuna reconsideración planteada por el peticionario fue declarada "no ha lugar" mediante resolución del 30 de septiembre de 1998 y notificada el 14 de octubre de 1998.

El 30 de noviembre de 1998[2], el peticionario presentó Petición de *Certiorari* ante este Tribunal, planteando los siguientes señalamientos de error:

> Erró el Honorable Tribunal de Circuito de Apelaciones al revocar la sentencia mixta dictada por el Juez de Instancia

---

[2] El término para presentar recurso de *certiorari* ante el Tribunal Supremo vencía el 13 de noviembre de 1998, pero el mismo quedó interrumpido de acuerdo a nuestra resolución del 2 de octubre de 1998, In re: Medidas Judiciales para Atender Emergencias Causadas por el Huracán Georges, 146 D.P.R. 711 (1998). El término de treinta (30) días para presentar el recurso ante este Tribunal, contados a partir del 31 de octubre de 1998, vencía el domingo 29 de noviembre de 1998, por lo que el recurso radicado el 30 de noviembre de 1998 se hizo dentro del término permitido por ley.

concediéndole al peticionario los beneficios de una sentencia suspendida al aplicar la Ley Núm. 33 de 27 de julio de 1993 al caso de autos.

En la alternativa, es inconstitucional la Ley Núm. 33 de 27 de julio de 1993, ya que tiene el efecto práctico de excluir de los beneficios de la sentencia suspendida el delito de homicidio y, al así hacerlo, crea una clasificación arbitraria sin un vínculo racional entre la clasificación y el interés gubernamental.

I

En el presente caso, nos corresponde dilucidar si una persona convicta por el delito de homicidio voluntario, cometido con un arma de fuego para la cual tenía licencia de poseer y portar, sigue siendo acreedora del beneficio de una sentencia en libertad, Ley Núm. 259, *supra*, luego de la enmienda introducida por la Ley Núm. 33 del 27 de julio de 1993.

La Ley de Sentencia Suspendida, *supra,* implementó en nuestra jurisdicción el sistema que le confiere a un convicto la oportunidad de cumplir su sentencia o parte de ella, en libertad, mientras observe buena conducta y guarde las restricciones impuestas por el tribunal sentenciador. Pueblo v. Zayas Rodríguez, 147 D.P.R. ____, Op. de 17 de febrero de 1999, 99 TSPR 15; Pueblo v. Molina Virola, 141 D.P.R. 613 (1996); Pueblo v. Pacheco Torres, 128 D.P.R. 586(1991).

En nuestros pronunciamientos hemos reconocido el carácter rehabilitador de esta ley, que pretende convertir al individuo en un miembro útil para la sociedad.[3] Pueblo v. Bonilla Vázquez, Op. de 3 de junio de 1999, 99 TSPR 86; Pueblo v. Texidor Seda, 128 D.P.R 578 (1991); Pueblo v. Vega Vélez, 125 D.P.R. 188, 195 (1990); Vázquez v. Caraballo, 114 D.P.R 272 (1983). "La probatoria es, pues, un recurso rehabilitador

---

[3] Cuando se implantó éste sistema, se tuvo el propósito de implementar la Sec. 19 del Art. VI de la Constitución del Estado Libre Asociado, 1 L.P.R.A. Art. VI § 19, que reza en lo pertinente: "propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social." Pueblo v. Vega Vélez, 125 D.P.R. 188 (1990).

para el convicto cuyos antecedentes penales y sociales no sean de naturaleza tal que su libertad represente un peligro social." Ernesto Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. III, Ed. Forum, 1992, Pág.565.

En cuanto a la naturaleza del beneficio de una sentencia suspendida, hemos expresado que se trata de un privilegio y no de un derecho. Pueblo v. Zayas Rodríguez, supra; Pueblo v. Molina Virola, supra; Pueblo v. Álvarez Maurás, 100 D.P.R. 620 (1978); Pueblo v. Rivera, 79 D.P.R. 880 (1957).

Sin lugar a dudas, la imposición de la pena en libertad  queda a la sana discreción del juez sentenciador, y a que el delito no sea uno de los expresamente excluidos por la ley. Véanse: Pueblo v. Texidor Seda, 128 D.P.R. 578, 583 (1991); Vázquez v. Caraballo, 114 D.P.R. 272 (1983); Pueblo v.  Rivera, 99 D.P.R. 568 (1971); Pueblo v. Llanos Virella, 97 D.P.R. 95 (1969).[4]

II

La Ley Núm. 33, *supra*, enmendó el Art. 2 de la Ley de Sentencias Suspendidas, 34 L.P.R.A. § 1027, quedando en ese momento redactado de la siguiente manera:

"El Tribunal Superior podrá suspender los efectos de la sentencia que se hubiera dictado en todo caso de delito grave que no fuere asesinato, robo, incesto, extorsión, violación, crimen contra natura, actos lascivos o impúdicos cuando la víctima fuere menos de 14 años, secuestro, escalamiento, incendio malicioso, sabotaje de servicios públicos esenciales, infracción a los Artícu[l]os 5, 6A en su modalidad de delito grave, 8 y 10 de la 'Ley de Armas de Puerto Rico' o cualquier violación a la Ley de Explosivos de Puerto Rico, que constituya delito grave y cualquier delito grave que surja como consecuencia de la posesión o uso ilegal de explosivos o sustancias que puedan utilizarse para fabricar explosivos o detonadores, artefactos o mecanismos prohibidos por la referida Ley de Explosivos de Puerto Rico, **o cuando la persona utilice o intente utilizar un**

---

[4] Esta discreción será respetada por este Foro, en ausencia de abuso de ella. Pueblo v. Ortega Santiago, 125 D.P.R. 203 (1990).

**arma de fuego en la comisión de un delito grave o su tentativa,...**"[5] (Énfasis suplido).

Aunque en Pueblo v. Álvarez Rodríguez, res. el 29 de junio de 2001, 2001 TSPR 99, nos negamos a realizar una interpretación de la referida disposición más allá de su letra, estamos concientes que la situación de autos requiere un análisis más profundo. Lo que innegablemente distingue este caso de Pueblo v. Álvarez Rodríguez, *supra*, es que el Sr. Negrón Caldero resultó absuelto de las infracciones a la Ley de Armas de Puerto Rico, *supra*, ya que estaba habilitado por el Estado para su posesión y portación.

Frente a la misión de interpretar una ley, los tribunales tenemos que hallar los propósitos perseguidos por la Asamblea Legislativa en su creación, y hacerlos prevalecer. Chase Manhattan Bank v. Mun. de San Juan, 126 D.P.R. 759 (1990).

"[E]n el proceso de indagar la intención del legislador es necesario examinar el historial legislativo. Si la ley tiene una exposición de motivos, ésta generalmente recoge el propósito que inspiró su creación. En los casos en que la ley carece de una exposición de motivos, o cuando aún teniéndola, no contiene la intención legislativa, es útil consultar otros documentos tales como los informes de las comisiones que estudiaron el proyecto de ley y los debates celebrados cuando la medida fue discutida en el hemiciclo, según aparecen en el Diario de Sesiones. De igual manera se pueden utilizar los anteproyectos y los informes alrededor de los mismos que son preparados fuera de la Asamblea Legislativa, cuando ésta los tuvo ante sí y adoptó sustancialmente los anteproyectos." Chévere v. Goldstein, res. del 15 de mayo de 2000, 2000 TSPR 42.

La Exposición de Motivos de la Ley 33, *supra*, narra:

Las estadísticas demuestran que un **alto por ciento de las personas que delinquen utilizan armas de fuego en la comisión del delito**. Esto ha creado una situación de alta peligrosidad para la ciudadanía.

---

[5] La Ley Núm. 301 de 2 de septiembre de 1999, sustituyó "Tribunal Superior" por "Tribunal de Primera Instancia", y añadió "imprudencia crasa o temeraria al conducir un vehículo de motor en estado de embriaguez".

Las personas que cometan delito bajo esta circunstancia, una vez convictas, pueden disfrutar de los beneficios de la sentencia suspendida y libertad bajo palabra si cumplen con los requisitos establecidos para la concesión de estos privilegios.

Los beneficios de sentencia suspendida o libertad bajo palabra no son un derecho que pueda reclamarse, sino un privilegio legislativo cuya concesión y administración se confía al Tribunal o a la Junta de Libertad bajo Palabra, respectivamente. Ambos privilegios son medidas penológicas que disfrutan los convictos como parte de su tratamiento de rehabilitación y se considera que mientras disfrutan de estos privilegios están técnicamente en reclusión.

**Dado el peligro que representa para nuestra sociedad el que las personas que utilizan o intentan utilizar un arma de fuego en la comisión de un delito grave o su tentativa estén en la libre comunidad** antes de que cumplan el término de reclusión que se les imponga, esta ley excluye del beneficio de la sentencia suspendida y de la libertad bajo palabra a dichas personas. (Énfasis suplido.)

Esta enmienda, sumamente amplia, se originó con el objetivo de contraatacar el alza criminal que estaba acechando a la isla, especialmente el aumento en los delitos cometidos con armas de fuego.[6] La Ley Núm. 33, *supra*, nace como resultado del P. de la C. 400 del 25 de marzo de 1993. Según el Informe de la Cámara de Representantes del 13 de julio de 1993, "[e]l alto porcentaje de personas que delinquen utilizando armas de fuego ha creado una situación de alta peligrosidad para la ciudadanía. Es un peligro para nuestra sociedad el que estas personas estén en la libre comunidad antes [de] que cumplan el término de reclusión que se les imponga."

En la página 5 del mencionado informe encontramos:

Es por todos conocido que el resultado por la utilización de un arma de fuego en la comisión de un delito puede acarrear resultados muy serios contra la vida humana, atentando contra

---

[6] El Informe del Senado P. de la C. 400, de 15 de junio de 1993, expresa en la página 1 lo siguiente:

"El P de la C. 400 tiene como propósito responder al reclamo de la opinión pública del país, a buscar los remedios más acertados para frenar la ola criminal que amenaza seriamente en mantener un estado de intranquilidad, buscar [sic], y angustia a todos los integrantes de la sociedad puertorriqueña."

la integridad física de la víctima. Es necesario **disuadir al criminal de la utilización de armas de fuego en la comisión de delitos.** Sabemos que de aprobarse el P. de la C. 400, esto constituiría un temor adicional que disuadirá a los criminales. (Énfasis suplido.)

En el informe se utilizaron datos recopilados por la Policía de Puerto Rico que demuestran un aumento constante de los delitos con armas de fuego, así en 1992 se cometieron 128,874 delitos Tipo I, que se dividen en delitos de violencia (asesinatos, robos, agresiones agravadas y violaciones por la fuerza), y delitos contra la propiedad, (escalamientos, apropiaciones ilegales y hurto de vehículos). En el año 1991 se cometieron 119,731 delitos Tipo I; 124,371 en 1990; 110,027 en el año 1989. De los 864 asesinatos que se cometieron en 1992, 741 fueron cometidos con armas de fuego, esto es: armas automáticas de 9 milímetros, 223 (rifles AR 15); armas compatibles para la AK (arma rusa); además del revólver común. En el año 91, el 61% de los delitos fueron cometidos con armas de fuego, en el año 1992, la cifra aumentó a un 85%.[7]

Del historial legislativo de la Ley Núm. 33, *supra,* puede fácilmente colegirse que el legislador trató de proteger a la sociedad puertorriqueña de los *criminales de oficio*, para ello, como mecanismo disuasivo, excluyó del régimen de sentencia suspendida a los convictos de delito grave, que hayan utilizado armas de fuego ilegalmente poseídas o portadas en la comisión del delito o su tentativa.

III

Entendemos que el legislador no contempló, por lo cual no pretendió excluir del beneficio de una sentencia en probatoria a una persona

---

[7] Informe de 4 de mayo de 1993, enviado por la Policía de Puerto Rico a la Representante Hon. Zaida Hernández Torres, Presidenta de la Comisión Especial sobre Litigación para Combatir el Crimen.

convicta por el delito de homicidio utilizando un arma de fuego para la cual tenía licencia de poseer y portar. Veamos.

También forma parte de las normas de interpretación, que: cuando un estatuto, a través de su lenguaje, no demuestra con claridad la intención legislativa, es necesario rechazar la *interpretación literal* cuando ésta es contraria al propósito legislativo. Mun. de San Juan v. Banco Gubernamental de Fomento, 140 D.P.R.873 (1996). Véase: Pueblo v. Zayas Rodríguez, supra; Clínica Juliá v. Sec. de Hacienda, 76 D.P.R. 509, 520 (1954). Esta norma nos llevó a decir en Pueblo v. Tribunal Superior, 104 D.P.R. 363, 366 (1975), que:

> Aún cuando el idioma en su interpretación literal contradiga el propósito de una disposición estatutaria, lo que debe ceder es el idioma y no la realidad que motiva el estatuto. Importa en consecuencia penetrar la superficie verbal del problema, ante nos, precisar el diseño y razón de ser de las disposiciones legales que aquí nos ocupan, sopesar los intereses en juego, para intentar acercarnos a la interpretación más justiciera.

Es norma de derecho penal, que la interpretación de los estatutos penales debe hacerse de manera restrictiva en cuanto perjudica al acusado y liberalmente en cuanto lo favorece. Pueblo v. Nelson Bonilla, Op. de 3 de junio de 1999, 99 TSPR 86; Pueblo v. Rodríguez Jiménez, 128 D.P.R. 121 (1991); Pacheco v. Vargas Alcaide, 120 D.P.R. 404 (1988); Pueblo v. Arandes de Celis, 120 D.P.R. 530 (1988); Pueblo v. Ríos Nogueras, 114 D.P.R. 256 (1983); R. E. Bernier, J. A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, Vol. I, 2da Ed., Pubs. JTS, 1987, págs. 462-463.

Para lograr una interpretación enmarcada en la realidad legal y social, es preciso que analicemos la Ley de Armas de Puerto Rico.

Allí encontramos, tanto en la ley vigente al momento en que al peticionario se le expidieron sus licencias, Ley Núm. 17 de 19 de enero de 1951, Arts. 15 y ss., según enmendada, como en la actual Ley de Armas

de Puerto Rico, Ley Núm. 404 de 11 de septiembre de 2000, Arts. 2.02 y ss., que el interesado en obtener una licencia debe satisfacer una serie de requisitos mínimos. Entre éstos, ser mayor de edad, **no tener antecedentes penales**, estar capacitado mentalmente; no ser ebrio habitual, ni adicto a sustancias controladas, entre otras. Esta serie de atributos distinguen a las personas que tienen licencia para portar o poseer armas de fuego de los delincuentes habituales o criminales de oficio, personas a quienes la Ley Núm. 33, *supra*, intentó disuadir de la comisión de delitos. Estas personas han pasado por el cedazo judicial o administrativo para obtener sus licencias.

A su vez, el delito de homicidio voluntario tipificado en el Art. 85 del Código Penal reza:

> Toda persona que matare a otra en ocasión de súbita pendencia o arrebato de cólera será sancionada con pena de reclusión por un término fijo de diez (10) años.

El elemento de maldad o malicia está ausente en el delito de homicidio, la muerte ilegal ocurre en ocasión de súbita pendencia o arrebato de cólera. Pueblo v. Sulman, 103 D.P.R. 429 (1975); Pueblo v. Rivera Alicea, 125 D.P.R. 37 (1989). Mal puede catalogarse como criminal habitual a una persona que, aunque ha cometido un delito, ha actuado sin maldad.

Este delito presupone a una persona ordinaria, que por cólera, pendencia o emoción violenta, causada por una provocación suficiente de la víctima, pierde el dominio de sí misma. Pueblo v. Belmonte Colón, 106 D.P.R. 82 (1977).[8] Es por ello que no se configura la intención específica del asesinato.

---

[8] Véanse: Pueblo v. Reyes Acevedo, 100 D.P.R. 703 (1973); Pueblo v. González Pagán, 120 D.P.R. 684 (1988).

El delito de homicidio voluntario cometido con un arma de fuego, para la cual se tenía licencia, es totalmente ajeno a la realidad social que el legislador trató de remediar.

Las estadísticas policiales utilizadas por el Cuerpo Legislativo para evaluar la enmienda, no distinguían entre el delito de homicidio y el de asesinato, ambos estaban incluidos en la misma categoría, dentro de los delitos de violencia.[9] Tampoco se menciona ni se distingue si el arma utilizada para cometer el delito grave o su tentativa, es un arma legalmente portada o poseída por el autor del delito.

Las leyes necesitan ser interpretadas y aplicadas en comunión con el propósito social que las inspira, sin desvincularlas de la realidad social y del problema humano que persiguen resolver. Col. Ing. Agrim. P.R. v. A.A.A., 131 D.P.R. 735, 756 (1992); Pueblo v. Pizarro Solís, 129 D.P.R. 911, 918, (1992).

Si tenemos en mente el fin perseguido por la legislatura al aprobar la Ley Núm. 33, esto es, disuadir a los criminales habituales de utilizar armas de fuego "ilegítimas" en la comisión de los delitos graves, nos damos cuenta de que la situación frente a la cual hoy nos encontramos merece ser distinguida.

> Siempre tiene que haber una razón para que exista una ley, y situaciones que no estén dentro de la razón de un precepto no deben ser considerada como incluidas en él, aunque aparezca de la letra de la ley. (Citas omitidas).[10]

Es por ello que entendemos que la intención del legislador es ajena al caso de autos, en que el Sr. Negrón Caldero resultó convicto de homicidio voluntario con un arma de fuego para la cual tenía licencia otorgada por el Estado. Esta persona, que tiene el privilegio de portar

---

[9] Idem. Nota al calce Núm. 6.

[10] Bernier y Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, Vol. I , 2da Ed. Publicaciones JTS, 1987, pág 246.

un arma, ya ha pasado por el cedazo de la autoridad para su otorgamiento, no es un criminal que habitualmente cometa delitos.

Sostener que esta persona está excluida del beneficio de sentencia suspendida conlleva a un resultado ilógico y no querido por el legislador. Las interpretaciones que conlleven a un resultado absurdo deben ser rechazadas. Mun. de San Juan v. Banco Gubernamental de Fomento, *supra*. Consecuentemente, no es de aplicación al presente lo resuelto en el caso de Pueblo v. Alvarez Rodríguez, supra, al efecto de que no es acreedor al beneficio de sentencia suspendida aquella persona que resulta convicta del delito de homicidio voluntario cometido con un arma de fuego poseída ilegalmente. Es de notar que en ese caso el imputado resultó convicto de la posesión y portación ilegal del arma de fuego con la cual cometió el delito.

El Tribunal de Primera Instancia determinó, en el caso de autos, que el Sr. Negrón Caldero era elegible para cumplir parte de la sentencia en probatoria, negársela por una aplicación literal del estatuto acarrea consecuencias contrarias al propósito legislativo de la Ley 33, *supra*, y al espíritu rehabilitar de la ley de Sentencias Suspendidas, *supra*.

IV

Luego de la interpretación que de la Ley Núm. 33, *supra*, hemos materializado en esta opinión, resulta inmeritorio entrar a considerar la impugnación sobre la validez constitucional de esta ley. En esa forma seguimos la reiterada norma: "[d]e que los tribunales no deben abordar planteamientos de índole constitucional cuando se puede disponer del caso en armonía con los intereses del apelante y en consonancia con los mejores fines de la justicia." Pueblo *ex rel*. M.G.G., 99 D.P.R.

925, 927 (1971).[11] Véanse: <u>Milán  Rodríguez v. Muñoz</u>, 110 D.P.R. 610, 618 (1981). Véanse: <u>Arcelay v. Departamento de Recursos Naturales y Ambientales</u>, res. el 7 de abril de 2000, 2000 TSPR 59; <u>Banco Popular v. Mun. de Mayagüez</u>, 126 D.P.R. 653, 660 (1990).

En <u>P.P.D.  v.  Barreto Pérez</u>, 110 D.P.R. 376, 429 (1980), establecimos que: "nuestra misión suprema es salvar –por preeminencia del derecho envuelto– aquellas situaciones en las cuales una interpretación literal y rigurosa plantearía interrogantes y objeciones de carácter constitucional. Así cuando el texto legal habla y se configura en términos *absolutos*, requiere que hagamos un esfuerzo por evitar el choque constitucional, si bien validándolo, pero atemperándolo si posible, y se logra satisfactoriamente la armonía entre el interés gubernamental envuelto ...", y en este caso en particular, el derecho del peticionario a gozar del beneficio de una sentencia suspendida.

Se dictará sentencia revocando al Tribunal de Circuito de Apelaciones y así dejando en todo sus efectos la sentencia dictada por el Tribunal de Primera Instancia.


JOSE A. ANDREU GARCIA
Juez Presidente

---

[11] Es norma jurisprudencial de autolimitación judicial, que no se considerará el aspecto constitucional de una ley cuando se puede resolver el asunto mediante un fundamento alterno. <u>Pueblo v. Marrero</u>, 79 D.P.R. 649, 652 (1956); <u>Mari Bras v. Alcaide</u>, 100 D.P.R. 506, 513 (1972); <u>Pacheco v. Srio de Instrucción Pública</u>, 108 D.P.R. 592, 601 (1979); <u>Díaz Aponte v. Comunidad San José</u>, 130 D.P.R. 782 (1992).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

 Recurrido

   vs.       CC-1998-954   Certiorari

Juan Negrón Caldero

 Demandado

SENTENCIA

San Juan, Puerto Rico, a 28 de junio de 2002

 Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia revocando al Tribunal de Circuito de Apelaciones y así dejando en todos sus efectos la sentencia dictada por el Tribunal de Primera Instancia.

 Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río disiente por entender que el dictamen del Tribunal de Circuito de Apelaciones sustancialmente correcto y lo confirmaría. El Juez Asociado señor Fuster Berlingeri no intervino. El Juez Asociado señor Rivera Pérez inhibido.

        Patricia Otón Olivieri
        Secretaria Tribunal Supremo