Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| RALPH ANTHONY GONZÁLEZ COLLAZO<br><br>RECURRENTE<br><br>V.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>RECURRIDO | KLRA202400648 | *Revisión Judicial* procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm. 147624<br><br>Sobre: No concesión del privilegio de Libertad Bajo Palabra – Reconsideración-Volver a Considerar |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

# SENTENCIA

En San Juan, Puerto Rico, a 28 de enero de 2025.

## I.

El 22 de noviembre de 2024, el señor Ralph Anthony González Collazo (señor González Collazo o recurrente), quien se encuentra privado de la libertad, presentó una *Petición de revisión administrativa* en la que solicitó que revoquemos una *Resolución* emitida por la Junta de Libertad Bajo Palabra (JLBP o parte recurrida) el 27 de septiembre de 2024, archivada en autos el 11 de octubre de 2024 y notificada el 15 de octubre de 2024.[1] En el dictamen, la JLBP resolvió no conceder el privilegio de libertad bajo palabra al señor González Collazo.

El 5 de diciembre de 2024, emitimos una *Resolución* en la que le concedimos a la JLBP hasta el 26 de diciembre de 2024 para presentar su alegato en oposición al recurso.

---

[1] Apéndice de la *Petición de revisión administrativa*, Anejo IX, págs. 22-26.

El 26 de diciembre de 2024, la JLBP radicó un *Escrito en cumplimiento de resolución* en el que solicitó que confirmemos la *Resolución* recurrida.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso de epígrafe, y, en adelante, pormenorizaremos los hechos procesales atinentes a la *Petición de revisión administrativa.*

**II.**

El caso de marras tiene su génesis el 6 de febrero de 2023 cuando el Departamento de Corrección y Rehabilitación (DCR) emitió una *Hoja de control sobre liquidación de sentencias* en la que reconoció que el señor González Collazo podría ser considerado por la JLBP para el privilegio de libertad bajo palabra tras cumplir con el mínimo requerido de su sentencia.[2]

El 6 de mayo de 2024, el DCR emitió un *Informe de ajuste y progreso a la Junta de Libertad Bajo Palabra*[3] en el que consignó que:

(1) El señor González Collazo se encontraba ingresado en el Centro Rehabilitación y Nuevas Oportunidades (CRNO) en Arecibo.
(2) El recurrente ha trabajado en el Proyecto Redes en Arecibo, dedicado al recogido de desperdicios sólidos, desde el 13 de junio de 2023 hasta el 13 de enero de 2024.
(3) El recurrente se encuentra desempleado porque su hombro derecho fue operado el 29 de enero de 2024. Recibe tratamiento del Fondo del Seguro del Estado (FSE).
(4) Como parte del plan de salida, el recurrente propuso una residencia en Ponce y a su hermana como persona con la que residiría.
(5) También, sobre el Empleo, Estudios o Tratamiento, se expresó: "Al momento no presenta oferta de empleo. Manifestó que, por su condición del hombro y reciente intervención quirúrgica, no realiza gestión al respecto, por desconocer qu[é] tipo de trabajos y/o tareas podrá realizar al estar recuperado o cuando el FSE le otorgue el alta".[4]

Sobre las Impresiones y Observaciones del Técnico Sociopenal, quedó consignado lo siguiente:

---

[2] Íd., Anejo II, pág. 3.
[3] Íd., Anejo III, págs. 4-5.
[4] Íd., pág. 5.

> El participante disfruta de Pases Familiares durante el fin de semana para visitar la residencia propuesta como plan de salida Al momento, cumple de manera satisfactoria con las normas y condiciones del CRNO, Arecibo. Manifestó que su hogar no result[ó] viable para la Junta LBP, ya que su madre no se encontraba presente en la residencia por haber viajado a E.U.
>
> Como parte de su plan institucional realiza tareas de bajo impacto físico, ya que recientemente fue operado de su hombro derecho y a[ú]n se encuentra en tratamiento.
>
> No cuenta por querellas por actos de indisciplina.[5]

El 12 de junio de 2024, el DCR emitió un *Informe de Re-evaluación Psicológica* en el que repasó las circunstancias del señor González Collazo.[6] En este, bajo el acápite "Resumen y recomendaciones", consignó lo siguiente:

> El Sr. Ralph A. González, cumple una sentencia de 21 años en el C.R.N.O. de Arecibo por los delitos de Homicidio atenuado en 2do grado y Violación de la Ley de Armas (Arma blanca). El Sr. Ralph A. González lleva aproximadamente 10 años en confinamiento. Actualmente, lleva aproximadamente 1 año y 1 mes en el CRNO de Arecibo, y ha mantenido un ajuste excelente en el programa. Este, se beneficia de pases familiares y trabaja en el recogido de basura en el pueblo de Arecibo, con mínima supervisión, todo esto sin mostrar o incurrir en actos de indisciplina o conducta antisocial.
>
> Durante la entrevista y proceso de evaluación tuvo una participación activa y dispuesta. Contestó las preguntas de forma detallada y honesta. Nunca tuvo reparos en contestar todas las preguntas que le fueron hechas. Mostr[ó] arrepentimiento y expresó haberles pedido perdón a los familiares de la víctima. Impresiona tener motivación hacia el cambio y compromiso con su rehabilitación.
>
> Del proceso de evaluación y entrevista se desprenden los siguientes **factores de riesgo** que pudieran precipitar que el evaluado incurra en una conducta delictiva. Estos se identifican como:
> 1. Modalidad del delito.
> 2. Abuso de sustancias controladas y alcohol desde muy temprana edad.
>
> Por otra parte, se identifican los **factores protectores** que pueden favorecer al evaluado en el proceso de rehabilitación. Estos son:
> 1. Primer ofensor.
> 2. Expresó arrepentimiento de su vida pasada y reconoció implicaciones de sus actos.
> 3. Impresiona contar con apoyo familiar.

---

[5] Íd., pág. 5.
[6] Íd., Anejo IV, págs. 6-11. La portada de este documento identifica su contenido como "información confidencial". En adelante, pormenorizamos el contenido de este únicamente en la misma medida en que el propio recurrente lo reseñó, e incluyó, en su *Petición de revisión administrativa*.

4. Presentó buenos ajustes y no cuenta con querellas.
5. Actualmente trabaja en la libre comunidad de lunes a viernes, en el recogido de basura y recibe pases familiares los fines de semana;
6. Complet[ó] el programa de tratamiento Aprendiendo a Vivir Sin Violencia.

En base a lo antes expuesto, se recomienda:

- Como parte de su rehabilitación y reinserción a la sociedad, el Sr. Ralph A. González pudiera beneficiarse de algún otro privilegio en la libre comunidad, como pernoctar en su residencia los 7 días de la semana, esto bajo supervisión electrónica.
- Una vez en la libre comunidad, debería recibir tratamiento ambulatorio centrado en el uso y abuso de sustancias controladas.
- Tratamiento psicológico individual de parte de un psicólogo clínico. Esto para ayudarlo a su reinserción y adaptación a la libre comunidad.
- De ser considerado para algún privilegio en la libre comunidad, el Técnico de Servicios Sociopenal en la comunidad, debe supervisar de forma **rigurosa** e **intensa** su conducta en la comunidad donde vaya a residir, en el lugar de trabajo y administrar pruebas de dopaje aleatoriamente.[7]

El 1 de julio de 2024, el DCR emitió un informe titulado *Resultado de investigación corta* en el que se evaluó la residencia propuesta por el recurrente, los familiares con los que residiría y el amigo y consejero anunciado.[8]

El 24 de septiembre de 2024, el Oficial Examinador de la JLBP, adscrito al caso, emitió un *Informe del Oficial Examinador* en el que consignó doce (12) determinaciones de hechos y la conclusión de que no se debía conceder el privilegio de libertad bajo palabra al señor González Collazo.[9]

El 27 de septiembre de 2024, la JLBP emitió la *Resolución* recurrida en la que resolvió no conceder el privilegio de libertad bajo palabra al señor González Collazo.[10] Como parte del dictamen, formuló las siguientes determinaciones de hechos:

1. El peticionario cumple una sentencia de veintiún (21) años por el delito de homicidio del Código Penal de 2012 e infracción al Art. 5.05 de la Ley de Armas de 2000.

---

[7] Íd., págs. 9-11. (Ennegrecido en el original).
[8] Íd., Anejo VII, págs. 16-18.
[9] Íd., Anejo VIII, págs. 19-21.
[10] Íd., Anejo IX, págs. 22-26. Archivada en autos el 11 de octubre de 2024 y notificada el 15 de octubre de 2024.

2. Conforme al expediente, tentativamente, cumple su sentencia el 9 de julio de 2031.

3. Al momento de la evaluación del expediente, surge que el peticionario no cuenta con casos ante los tribunales, denuncias o querellas institucionales pendientes.

4. Conforme se desprende del expediente, el peticionario se encuentra clasificado en custodia mínima desde el 27 de octubre de 2021.

5. El 22 de septiembre de 2013 le fue realizada la muestra de ADN, conforme establece la Ley Núm. 175 del 24 de julio de 1998, según enmendada, conocida como la *Ley del Banco de Datos de ADN de Puerto Rico.*

6. El 3 de noviembre de 2017 el peticionario se benefició de las terapias de *Transformación de Patrones Adictivos.*

7. El peticionario completó el taller de *Resiliencia y Apoderamiento* el 11 de febrero de 2019.

8. El 30 de enero de 2020, completó el Programa de Tratamiento Psico-Educativo *Aprendiendo* a Vivir Sin Violencia ofrecido por la Sección de Programa de Evaluación y Asesoramiento (SPEA). Del mismo modo, fue reevaluado por SPEA el 23 de abril de 2024 y cuenta con *Informe de re-evaluación psicológica.*

9. El peticionario se encontraba laborando en el recogido de desperdicios sólidos para el Proyecto Redes en Arecibo, Puerto Rico desde el 13 de junio de 2023 hasta el 13 de enero de 2024.

10. La parte peticionaria propuso residir con su hermana, Yesenia González Collazo, en la Barriada Clausell, Calle Central #72 en Ponce, Puerto Rico. Del informe de corroboración realizado por el Programa de Comunidad de Ponce del DCR se desprende que es la madre del peticionario, Ada Collazo, el recurso con quien este propone residir y que es aceptado en el hogar. No obstante, luego de la correspondiente corroboración, y posterior evaluación, se determina que no es viable debido a su proximidad con el hogar de las partes perjudicadas del caso. Además, surge del expediente del peticionario que este había propuesto la referida residencia anteriormente y, luego de la correspondiente corroboración por el DCR, se determinó que no era viable.

11. El peticionario propuso como candidato para fungir como amigo consejero a Fidel Santiago Mercado, residente de Ponce, Puerto Rico. Este fue debidamente corroborado por el DCR.

12. Por otro lado, el peticionario no propuso oferta de empleo.[11]

Además, concluyó lo siguiente:

El peticionario no cuenta con casos ante los tribunales, denuncias o querellas institucionales pendientes, se encuentra clasificado en custodia mínima y le fue realizada la toma de la muestra de ADN, según requerido por la Ley Núm. 175-1998, *supra.* En adición, se benefició de tratamiento contra la adicción, así como del taller de *Resiliencia y Apoderamiento,* completó el Programa de Tratamiento Psico-Educativo *Aprendiendo a Vivir Sin Violencia* y cuenta con evaluación psicológica actualizada. Además, el amigo consejero propuesto por el peticionario fue debidamente corroborado por el Programa de Comunidad de Ponce del DCR y, luego de la correspondiente evaluación, resultó viable.

Por otro lado, respecto a su plan de salida, a pesar de que el hogar propuesto fue corroborado por el DCR y el peticionario

---

[11] Íd., págs. 22-23. (Subrayado nuestro).

es aceptado, <u>al evaluar la viabilidad se determina que no es viable, puesto que está relativamente cercana a la residencia de la parte perjudicada del caso.</u> (Véase Art. X, Secc. 10.1 (B) (7-e-v(d)) del del [sic] *Reglamento de la Junta de Libertad Bajo Palabra,* Reglamento Núm. 9232 del 18 de noviembre de 2020). Pese a lo anterior, la referida residencia propuesta por el peticionario es la misma que fue debidamente corroborada por el Programa de Comunidad de Ponce del DCR el 5 de junio de 2023 y que la Junta determinó que no era viable. El peticionario deberá someter una nueva vivienda en su plan de salida para su debida corroboración y evaluación cuando se vuelva a reconsiderar el caso<u>. Por otro lado, no propuso oferta de empleo. Por consiguiente, no cuenta con un plan de salida estructurado en dos (2) de sus tres (3) áreas.</u>

Evaluada la totalidad del expediente, y dentro de la discreción que ostenta la Junta para evaluar los criterios mencionados anteriormente, <u>consideramos que el peticionario no cualifica para beneficiarse del privilegio de libertad bajo palabra.</u>

En mérito a lo aquí expuesto y al amparo de las facultades conferidas a la Junta, en virtud de la Ley Núm. 118, *supra,* según enmendada, <u>se dispone no conceder el privilegio de libertad bajo palabra a Ralph Anthony González Collazo.</u> Este caso volverá a ser considerado para el mes de septiembre de 2025, fecha en la cual el DCR deberá someter un *Informe de ajuste y progreso* e *Informe de libertad bajo palabra* con el plan de salida debidamente corroborado.[12]

El 21 de octubre de 2024, el señor González Collazo radicó una *Moción en reconsideración de resolución de no conceder privilegio de libertad bajo palabra* en la que solicitó a la JLBP que reconsiderara su dictamen.[13]

El 23 de octubre de 2024, la JLBP emitió una *Resolución* en la que resolvió No Ha Lugar la reconsideración solicitada por el recurrente.[14]

Inconforme, el 22 de noviembre de 2024, el señor González Collazo presentó el recurso de epígrafe en el que solicitó que revoquemos el dictamen de la JLBP y le imputó a la parte recurrida la comisión del siguiente error:

Abusó de su discreción la JLBP y violentó el debido proceso de ley del recurrente al no conceder el privilegio de libertad bajo palabra cuando no consideró la totalidad del expediente, el estatus médico del recurrente quien fue operado del hombro (está bajo la tutela del FSE) y al determinar que el hogar no es viable cuando existe una determinación preliminar de viabilidad del DCR sobre la viabilidad del hogar propuesto donde disfruta de Pases

---

[12] Íd., pág. 24. (Subrayado nuestro).
[13] Íd., Anejo XI, págs. 28-32.
[14] Íd., Anejo XII, págs. 33-35. Notificada y archivada en autos ese mismo día.

Familiares como parte de su proceso de rehabilitación, la determinación no está sustentada en evidencia sustancial.

Es su posición que cumple con todos los requisitos reglamentarios para que se le conceda el privilegio de libertad bajo palabra.

En primer lugar, argumenta que la JLBP basó su determinación en la falta de oferta de empleo porque el inciso (7)(d)(iv) de la Sección 10.1(B) del derogado *Reglamento de la Junta de Libertad bajo Palabra*, Reglamento Núm. 9232 de 18 de noviembre de 2020, Junta de Libertad Bajo Palabra, pág. 41, (derogado Reglamento Núm. 9232) deja claro que la carencia de oferta de empleo no será razón suficiente para negar el privilegio.

En segundo lugar, plantea que el hogar propuesto fue determinado viable de forma preliminar por el DCR, ya que es el lugar donde recibe el beneficio de Pases Familiares, sin custodia, aceptado por la comunidad, sin quejas, demostrando ajustes positivos y se le describe como un buen vecino.

En tercer lugar, argumenta que, para beneficiarse de Pases Familiares, el DCR tuvo que evaluar el hogar, especialmente la distancia entre este y la residencia de una víctima y, considerado dicho factor, la aprobó para el que le recurrente participara del programa.

En cuarto lugar, reclamó que la distancia entre las residencias no forma parte del expediente, ni tuvo acceso a dicha información, y, por ello, se violentó el debido proceso de ley que le cobija.

Por último, adujo que el DCR recomendó, para su reinserción, que se beneficiara de más privilegios en la libre comunidad, tales como pernoctar fuera de la institución penal, con grillete, los siete (7) días de la semana.

En contraste, el 26 de diciembre de 2024, la JLBP radicó un *Escrito en cumplimiento de resolución*, solicitando que confirmemos la *Resolución* recurrida. Es su contención que el dictamen se

fundamentó correctamente en el incumplimiento del recurrente con dos (2) criterios para la concesión del privilegio: (1) la cercanía de la residencia propuesta respecto a la residencia de una víctima del delito cometido por el señor González Collazo; y (2) la falta de oferta de empleo.

Respecto a la residencia propuesta por el recurrente, destaca que: (1) la primera vez que la JLBP determinó que la residencia no era viable se debió a que estaba deshabitada; (2) ante la inviabilidad de la residencia, no se entró a evaluar la distancia de esta respecto al hogar de la víctima; (3) la inviabilidad no se debió a la ausencia de la madre, como arguye el recurrente, porque tanto en esa ocasión, como en esta, se propuso que residiría con su hermana; (4) el análisis de viabilidad no se limita a que el DCR corrobore que el hogar es apropiado, sino que la JLBP conserva discreción para evaluar la residencia propuesta, según sus criterios reglamentarios; y (5) de acuerdo con el inciso (8)(e)(v)(d) de la Sección 10.1(B) del Art. X del vigente *Reglamento de la Junta de Libertad bajo Palabra*, Reglamento Núm. 9603 de 25 de septiembre de 2024, Junta de Libertad Bajo Palabra, pág. 43, (Reglamento Núm. 9603) como la residencia propuesta quedaba a menos de treinta (30) millas de distancia en vehículo del hogar de una víctima, no era viable. Sobre esto último, arguye que el derecho de la víctima protege la información exacta sobre la localización de su residencia, se encuentra sellada y, por ello, el recurrente no tiene derecho a ella, especialmente dentro del proceso adjudicativo informal ante la JLBP.[15]

---

[15] Cabe destacar que la JLBP sometió como Anejo confidencial, adjunto al *Escrito en cumplimiento de resolución*, la información sobre la cercanía entre la residencia propuesta y el hogar de una víctima del delito por el que el señor González Collazo fue convicto. Así, la pudimos evaluar y, como cuestión de hecho, resulta evidente que la residencia propuesta por el recurrente está localizada a muy poca distancia, dentro del límite de treinta (30) millas en vehículo respecto al hogar de una víctima del delito por el que fue convicto.

Respecto al reclamo del recurrente sobre la oferta de empleo como criterio, esboza que la incapacidad alegada debía ser debidamente diagnosticada y certificada por una autoridad competente, en conformidad con el inciso (8)(d)(iv) de la Sección 10.1(B) del Art. X del Reglamento Núm. 9603, *supra*. Sin embargo, aduce que el recurrente no presentó prueba del diagnóstico y optó por no hacer gestiones adicionales de empleo o educación.

### III.

### A.

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.*, (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. ***Capó Cruz v. Junta de Planificación***, 204 DPR 581, 590-591 (2020); ***Rolón Martínez v. Supte. Policía***, 201 DPR 26, 35 (2018). Es decir, que este tipo de revisión busca limitar la discreción de las agencias y garantizar que estas desempeñen sus funciones de acuerdo con los confines de la ley. ***García Reyes v. Cruz Auto Corp.***, 173 DPR 870, 891-892 (2008). De la mano con esto, es norma reiterada de derecho que los foros revisores le concederán gran deferencia y consideración a las decisiones de las agencias administrativas, debido a la vasta experiencia y el conocimiento especializado sobre los asuntos que le fueron delegados. ***Graciani Rodríguez v. Garage Isla Verde, LLC,*** 202 DPR 117, 126 (2019); ***Rolón Martínez v. Supte. Policía***, supra. Conforme a ello, los tribunales deben ser cautelosos al intervenir con las decisiones de los organismos administrativos. ***Metropolitana, S.E. v. A.R.Pe.***,

138 DPR 200, 213 (1995); *Gallardo v. Clavell*, 131 DPR 275, 289–290 (1992).

Por las razones antes aludidas, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. *Capó Cruz v. Junta de Planificación*, supra; *Rolón Martínez v. Supte. Policía*, supra; *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 130 (1998).

Así, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). Cónsono con ello, será necesario determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Rolón Martínez v. Supte Policía,* supra.

Según ha quedado establecido como norma general, el ejercicio de revisión judicial de una decisión administrativa se limita a tres asuntos: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial que obra en el expediente administrativo; y (3) la revisión completa y absoluta de las conclusiones de derecho. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

De esta forma, en el contexto de las determinaciones de hechos realizadas por las agencias administrativas, nuestro más alto foro ha pautado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero*

*Mercado v. Toyota*, 163 DPR 716, 727-728 (2005); ***Domínguez v. Caguas Expressway Motors, Inc.***, 148 DPR 387, 397 (1999). Dentro de este marco, evidencia sustancial se entiende como "aquella evidencia pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión". ***Ramírez v. Depto. de Salud***, 147 DPR 901, 905 (1999). Por ello, la parte que alegue que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. ***Metropolitana S.E. v. A.R.Pe.***, 138 DPR 200, 213 (1995) citando a ***Hilton Hotels International, Inc. v. Junta de Salario Mínimo***, 74 DPR 670, 686 (1983).

En otras palabras, la parte recurrente tiene la obligación de derrotar la presunción de corrección de los procesos y de las decisiones administrativas. ***Fac. C. Soc. Aplicadas, Inc. v. C.E.S.***, 133 DPR 521, 532 (1993). Si no demuestra que existe esa otra prueba, las determinaciones de hechos del organismo administrativo deben ser sostenidas por el tribunal revisor. ***Ramírez v. Depto. de Salud***, supra.

Ahora bien, cuando se trate de <u>conclusiones de derecho</u> que no envuelvan interpretaciones dentro del área de especialización de la agencia, éstas se revisarán por los tribunales sin circunscribirse al razonamiento que haya hecho la agencia. ***Capó Cruz v. Junta de Planificación***, supra; ***Pacheco v. Estancias***, 160 DPR 409, 432 (2003); ***Rivera v. A & C Development Corp.***, 144 DPR 450, 461 (1997). Cuando las determinaciones de las agencias estén entremezcladas con conclusiones de derecho, el tribunal tendrá amplia facultad para revisarlas, como si fuesen una cuestión de derecho propiamente. ***Pacheco v. Estancias***, supra, pág. 433; ***Rivera v. A & C Development Corp.***, *supra*. En nuestro

ordenamiento jurídico, es norma reiterada que, en el proceso de revisión judicial, los tribunales tienen la facultad de revocar al foro administrativo en materias jurídicas. Véase, además, la Sec. 4.5 de LPAU, *supra* sec. 9675.

Es pertinente señalar que nuestro sistema de adjudicación administrativo busca "alentar la solución informal de las controversias", según establece la Sec. 1.2 de la LPAU, *supra* sec. 9602. Para ello, la LPAU permite que las agencias establezcan las reglas y procedimientos que regirán ante sí para la solución rápida e informal de las controversias; siempre salvaguardando los derechos garantizados por ley. Íd. Por lo cual, las agencias no quedan sometidas a un procedimiento rígido que obstaculiza la producción de una solución rápida, justa y económica. Íd.

En suma, la referida deferencia debe ceder cuando se demuestre que: (1) la decisión no está basada en evidencia sustancial; (2) la agencia ha errado en la aplicación de la ley; (3) la actuación de la agencia resulta ser arbitraria, irrazonable o ilegal; y (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012) (*citando a Empresas Ferrer v. A.R.PE.*, 172 DPR 254, 264 (2007)).

**B.**

El Art. IV, Sec. 19 de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, estableció como política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". En aras de cumplir con ese mandato, la Asamblea Legislativa ha promulgado varias figuras estatutarias y, entre ellas, se destaca por su relevancia la libertad bajo palabra, estatuida mediante la *Ley de la Junta de Libertad Bajo*

*Palabra*, Ley Núm. 118 de 1974, según enmendada, 4 LPRA secs. 1501 *et seq.*, (Ley Núm. 118-1974). ***Pueblo v. Álvarez Rodríguez,*** 154 DPR 566, 570 (2001), citando a ***Pueblo v. Zayas Rodríguez,*** 174 DPR 530, 536 (1999).

Mediante la Ley Núm. 118-1974, *supra*, se le concede a una persona privada de la libertad por una convicción el beneficio de cumplir con la última parte de su sentencia fuera de la institución penal, sujeto a que demuestre buena conducta y cumpla con ciertas condiciones. Art. 3 de la Ley Núm. 118-1974, *supra* sec. 1503. Por eso, faculta a la JLBP a, en cualquier caso, "imponer las condiciones que creyere aconsejables y fijar condiciones que podrán ser alteradas de tiempo en tiempo, según cada caso lo amerite". Íd. Este beneficio busca principalmente ayudar a los confinados a reintegrarse positivamente a la sociedad, sin tener que estar encarcelados la totalidad del término de su sentencia. ***Maldonado Elías v. González Rivera,*** 118 DPR 260, 275 (1987).

Entre sus disposiciones, el Art. 3-A de la Ley Núm. 118-1974, *supra* sec. 1503a, define que "víctima de delito" incluirá cualquier persona contra quien se haya cometido un delito; su tutor; su custodio; su cónyuge sobreviviente; o su pariente hasta el tercer grado de consanguinidad, cuando haya fallecido, fuese menor de edad o estuviera incapacitada para comparecer y prestar testimonio. Entre las protecciones que el estatuto le brinda a la víctima de delito, el Art. 3-B de la Ley Núm. 118-1974, *supra* sec. 1503b, establece:

> <u>Exigir que se mantenga la confidencialidad de la información sobre su dirección residencial</u> y de negocios, así como los números telefónicos, cuando las circunstancias particulares del caso y la seguridad personal de la víctima y de sus familiares lo ameriten. Al igual que cualquier documento, papel, fotografía que contenga esta información y que se encuentre bajo custodia de la Junta y de sus empleados, exceptuando aquellos casos conforme lo dispone la Ley Núm. 22 de 22 de Abril de 1988 (25 L.P.R.A. § 973 ét seq.), según enmendada. (Subrayado nuestro).

Cónsono con ello, el Art. 3-G de la Ley Núm. 118-1974, *supra* sec. 1503g, obliga al Departamento de Justicia a mantener un registro

confidencial de las personas que han sido víctimas de delito, creándose un expediente aparte que acompañará el expediente del convicto. En concreto, también prescribe lo siguiente:

> [...] Dicho Registro de la información sobre la víctima se mantendrá sellado para uso exclusivo de los funcionarios llamados a notificarlo para su participación en los distintos trámites de justicia criminal. Será responsabilidad de los funcionarios autorizados sellar nuevamente dicho expediente inmediatamente después de utilizarlo para los fines de notificar a la víctima. El convicto, ya sea directamente o a través de su representante legal, por ningún motivo tendrá acceso a la información relacionada a la víctima. De ninguna forma, el Departamento de Justicia podrá mantener un directorio que contenga el nombre, dirección física, postal o electrónica y teléfono o cualquier otra información de carácter personal de la víctima y sus allegados. Cualquier persona que divulgue, sin la debida autorización, cualquier información confidencial contenida en dicho Registro, incurrirá en delito grave de cuarto grado.
>
> En aquellos casos en que la víctima renuncie a su derecho a ser notificado podrá igualmente solicitar que se elimine su nombre del Registro. Íd. (Subrayado nuestro).

Entretanto, sobre los criterios de elegibilidad a programas de libertad bajo palabra, el Art. 3-D de la Ley Núm. 118-1974, *supra* sec. 1503d, dispone:

> La Junta tendrá facultad para conceder el privilegio de libertad bajo palabra a una persona recluida en una institución penal en Puerto Rico, tomando en consideración los siguientes criterios:
> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
> (2) Las veces que el confinado haya sido convicto y sentenciado.
> (3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.
> (4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.
> (5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.
> (6) La edad del confinado.
> (7) El o los tratamientos para condiciones de salud que reciba el confinado.
> (8) La opinión de la víctima.
> (9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.
> (10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.
> (11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho. (Subrayado nuestro).

Ahora bien, nuestro Tribunal Supremo ha resuelto que el beneficio de la libertad bajo palabra no es un derecho reclamable, sino un privilegio, cuya concesión y administración recae sobre los tribunales o la JLBP. *Quiles v. Del Valle,* 167 DPR 458, 475 (2006). Véase, también, *Pueblo v. Negrón Caldero,* 157 DPR 413, 418 (2002); *Pueblo v. Zayas Rodríguez,* 147 DPR 530, 536 (1999); *Pueblo v. Molina Virola,* 141 DPR 613, 719 (1996). Así, la decisión de conceder o denegar este privilegio descansa en la entera discreción del Estado, sin que exista un derecho a obtenerlo. *Maldonado Elías v. González Rivera,* supra, págs. 275-276.

Empero, el procedimiento para la concesión o revocación de la libertad bajo palabra debe cumplir con ciertas salvaguardas procesales. *Maldonado Elías v. González Rivera,* supra, pág. 276. Esto, pues la persona que goza de la libertad bajo palabra tiene una libertad condicionada o cualificada, la cual representa un interés de suficiente valor como para exigir las garantías mínimas del debido proceso de ley cuando se le intente despojar del privilegio. *Quiles v. Del Valle,* supra; *Maldonado Elías v. González Rivera,* supra. Sin embargo, estas garantías no se equipararán totalmente a las que tiene un acusado en un procedimiento criminal, pues la libertad condicional no tiene la misma magnitud que la libertad que goza un ciudadano común. Íd., citando a *Martínez Torres v. Amaro Pérez,* 116 DPR 717, 723 (1985).

En consecuencia, nuestro más alto foro ha interpretado que: (1) las guías y los criterios que se utilizan para conceder el privilegio deben publicarse y hacerse disponible a los confinados; (2) debe realizarse una vista o evaluación de la solicitud; (3) de ordinario, el confinado debe tener acceso a la información que utiliza la JLBP para efectuar su decisión; y (4) al confinado se le debe informar por escrito las razones por las cuales se le deniega el privilegio. *Maldonado Elías v. González Rivera,* supra. Asimismo, también

ha quedado pautado que, luego de concedido, para que se revoque el privilegio de libertad bajo palabra debe celebrarse: (1) una vista preliminar para auscultar si hay causa probable para creer que el liberado ha violado las condiciones de la libertad bajo palabra, y (2) una vista final antes de la decisión definitiva sobre si la libertad bajo palabra será revocada. ***Quiles v. Del Valle,*** supra; ***Maldonado Elías v. González Rivera,*** supra, pág. 276-277.

## C.

El Reglamento Núm. 9603, *supra,* fue promulgado por la JLBP para adoptar las normas procesales que rigen la función adjudicativa de ese organismo respecto al privilegio de libertad bajo palabra. Art. II, Reglamento Núm. 9603, *supra,* pág. 4.

En lo pertinente, el Art. V del Reglamento Núm. 9603, *supra,* págs. 5-17, acuñó las siguientes definiciones, destacadas por su relevancia:

> [...]
> v. Informe Breve de Libertad Bajo Palabra: Investigación realizada por el técnico de servicios sociopenales del Programa de Comunidad del Departamento de Corrección y Rehabilitación, cuyo fin será, entre otras cosas, corroborar la viabilidad del plan de salida propuesto y la opinión de la comunidad inmediata.
>
> w. Informe de Ajuste y Progreso: Estudio realizado por el técnico de servicio sociopenales en relación con la conducta observada por la persona mientras esta confinada en una institución, en un programa de desvío o disfruta de libertad bajo palabra. Incluye aspectos de trabajo o estudio, compensación, salud física o mental, adicción, tratamiento, disfrute de pases, personas que lo visitan en la institución y otros aspectos relevantes según el caso.
>
> x. Informe de Libertad Bajo Palabra: Estudio realizado por un técnico de servicio sociopenales del Programa de Comunidad del Departamento de Corrección y Rehabilitación, el cual incluye el historial social y delictivo; circunstancias del delito(s), versión oficial del delito, dirección postal y física, dirección de correo electrónico y opinión del perjudicado, opinión de la familia y la comunidad respecto a la liberación del miembro de la población correccional, ajustes institucionales, descripción, corroboración, evaluación del plan de salida, más cualquier otra información relevante que el técnico de servicios sociopenales considere que debe conocer la Junta.
>
> y. Informe de oficial examinador: Informe escrito rendido por el oficial examinador, en el cual expresa las determinaciones de hecho, conclusiones de derecho y emite su recomendación para la consideración de la Junta.

[...]

zz. Víctima de delito: Cualquier persona natural contra quien se haya cometido o se haya intentado cometer cualquier delito tipificado en las leyes del Gobierno de Puerto Rico o en las leyes de los Estados Unidos de América, o el tutor o custodio legal de tal persona, cónyuge sobreviviente o un pariente hasta el tercer grado de consanguinidad, cuando aquella hubiese fallecido, fuese menor de edad o estuviere física o mentalmente incapacitada para comparecer a prestar testimonio. Asimismo, el Estado Libre Asociado de Puerto Rico, en aquellos casos en que una persona haya sido convicta por cometer cualquier delito contra los bienes y/o derechos patrimoniales públicos o contra la función pública, según enumerados en la Ley Núm. 118, *supra*.[16]

Como parte del andamiaje establecido, el Art. VIII del Reglamento Núm. 9603, *supra*, págs. 22-34, delinea los derechos y las obligaciones de las víctimas de delito dentro de los procedimientos de la JLBP, con especial énfasis en el derecho de la víctima a ser notificada, a participar y a tener acceso al expediente.

En adición, el inciso (9) de la Sección 8.1 del Art. VIII del Reglamento Núm. 9603, *supra*, págs. 23-24, le otorga a la víctima de delito el siguiente derecho:

<u>Exigir que se mantenga la confidencialidad de la información sobre su dirección residencial</u> y de negocios, así como los números telefónicos y cualquier documento, papel, fotografía que contenga esta información y que se encuentre bajo custodia de la Junta y de sus empleados, cuando las circunstancias particulares del caso y la seguridad personal de la víctima y de sus familiares lo ameriten. (Subrayado nuestro).

Igualmente, el Art. X del Reglamento Núm. 9603, *supra*, págs. 36-53, establece los criterios de elegibilidad a ser considerados por la JLBP. A esos efectos, la Sección 10.1(A) del Art. X del Reglamento Núm. 9603, *supra*, pág. 36, dispone que la JLBP evaluará las solicitudes, caso a caso, según el grado de rehabilitación y ajuste que presente el solicitante durante su reclusión. Entre los criterios que se tomarán en consideración, la Sección 10.1 del Art. X del Reglamento Núm. 9603, *supra*, págs. 36-48, estatuye: (1) el historial delictivo; (2) una relación de liquidación de la sentencia que extingue el solicitante; (3) la clasificación de su custodia, el tiempo que lleva

---

[16] Art. V del Reglamento Núm. 9603, *supra*, págs. 10 y 15.

en ella y los cambios que haya tenido, si alguno; (4) la edad del solicitante; (5) la opinión de la víctima; (6) el historial social del solicitante; (7) <u>si cuenta con un plan de salida estructurado y viable respecto a la oferta de empleo y/o estudio, residencia y amigo consejero</u>; y (8) el historial de salud del solicitante.

Respecto al criterio de oferta de empleo y/o estudio, el inciso (8)(d) de la Sección 10.1(B) del Art. X del Reglamento Núm. 9603, *supra*, págs. 40-41, prescribe:

> i. Todo peticionario deberá proveer una oferta de empleo o, en la alternativa, un plan de estudios o adiestramiento vocacional, o estudio y trabajo.
> ii. La oferta de empleo se presentará mediante carta suscrita por la persona que extiende la oferta de empleo al peticionario, incluyendo la siguiente información:
> (a) Nombre completo, dirección postal, física, electrónica y teléfono(s) de la persona que ofrece el empleo.
> (b) Nombre, dirección postal, física, electrónica y teléfono(s) y naturaleza del negocio en el cual se ofrece el empleo.
> (c) Funciones que ejercerá el peticionario y el horario de trabajo.
> iii. Los planes de estudio, incluyendo el adiestramiento vocacional y/o el programa de estudio y trabajo, se presentarán sometiendo la carta de aceptación de la institución educativa, con expresión del programa o facultad al cual ingresara. El empleo deberá incluir descripción de funciones.
> iv. <u>Se exime de presentar una oferta de empleo o estudios en aquellos casos en que el peticionario padezca de alguna incapacidad física, mental o emocional, debidamente diagnosticada y certificada por la autoridad competente</u>, o el peticionario sea mayor de sesenta (60) años. (Subrayado nuestro).[17]

Sobre la residencia, el inciso (8)(e) de la Sección 10.1(B) del Art. X del Reglamento Núm. 9603, *supra*, págs. 41-44, preceptúa:

> i. Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o en un programa interno.
> ii. De proponer una residencia, el peticionario proveerá a su técnico de servicio sociopenal el nombre completo, número de teléfono y correo electrónico de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia para que esta sea corroborada por el Programa de Comunidad correspondiente. En

---

[17] En el derogado Reglamento Núm. 9232, *supra*, pág. 41, el inciso equivalente incluía que "[l]a oferta de empleo o estudio no será razón suficiente para denegar el privilegio".

estos casos, se realizará además una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.

iii. De proponer una residencia propia y no contar con un recurso familiar, deberá presentar como recurso y apoyo al amigo consejero o alguna persona que le pueda servir de apoyo, aunque no resida con el peticionario. Deberá presentar el nombre completo de esa persona, número de teléfono y correo electrónico. En estos casos, también se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.

iv. Si el peticionario interesa ingresar a un programa interno, tendrá que presentar la carta de aceptación del programa, así como proponer una residencia alterna en la cual disfrutará de los pases, en los casos que aplique. Dicha residencia alterna será corroborada para determinar su viabilidad. Si la residencia alterna no resulta viable, el peticionario no podrá disfrutar de pases hasta tanto provea una residencia alterna viable, y así lo autorice la Junta. Además de la carta de aceptación, en caso de que el Programa de Tratamiento interno al que desea ingresar el peticionario sea costeado por el Departamento de Corrección y Rehabilitación, deberá contar con un referido de este último donde se exprese que el mismo es autorizado para ingresar a dicho Programa, siempre y cuando sea requerido por el Departamento de Corrección y Rehabilitación. La determinación será basada en los criterios establecidos por el Departamento de Corrección y Rehabilitación.

v. Para determinar si la vivienda propuesta es viable, la Junta considerará, pero sin limitarse a, lo siguiente:

(a) Las características personales e historial delictivo de las personas con las cuales convivirá el peticionario en la vivienda, y como el peticionario se relaciona con estos.

(b) Opinión de la comunidad sobre la determinación de conceder el privilegio y de las personas con las cuales convivirá el peticionario.

(c) Condición de la planta física de la residencia y cantidad de habitantes en esta.

(d) <u>Si la residencia propuesta está a 30 millas de distancia en vehículo de la residencia de la parte perjudicada.</u>[18]

(e) Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta.

(f) En los casos que aplique, si el peticionario se encuentra incluido en el contrato de vivienda o haya certificación de la administración correspondiente.

(g) Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual. (Subrayado nuestro).

---

[18] El inciso equivalente del derogado Reglamento Núm. 9232, *supra*, pág. 43, únicamente disponía como criterio: "Si la residencia propuesta está relativamente cercana a la residencia de la víctima de delito".

Por último, el inciso (E) del Art. XVI del Reglamento Núm. 9603, *supra*, págs. 88-89, fija sobre la confidencialidad de la información de las víctimas de delito, lo siguiente:

> E. <u>La información relacionada a la dirección residencial y de negocios, así como los números telefónicos de las víctimas, se mantendrá confidencial. Ningún informe, papel, dibujo, fotografía o documento que contenga dicha información y esté bajo la custodia de la Junta, estará disponible para inspección pública</u>, a menos que la información de la dirección y teléfono de la víctima haya sido omitida. Ningún funcionario o empleado público divulgará la información sobre la dirección y teléfonos de la víctima, salvo en las instancias establecidas en el Artículo 2(c) de la Ley Núm. 22 de 22 de abril de 1988, según enmendada, mejor conocida como la *Carta de Derechos de las Víctimas y Testigos de Delito*. (Subrayado nuestro).

**IV.**

En el caso de marras nos corresponde resolver si procede confirmar una denegatoria de la JLBP a conceder el privilegio de libertad bajo palabra al recurrente cuando la residencia que propone se encuentra a menos de treinta (30) millas en vehículo del hogar de una víctima del delito por el que fue convicto y cuando tampoco presentó una oferta de empleo, ni un diagnóstico o certificado médico que le eximiera de su presentación.

En solicitud de que revoquemos el dictamen y le concedamos el privilegio, el señor González Collazo argumenta que: la JLBP no consideró la totalidad del expediente, la denegatoria no estuvo basada en evidencia sustancial, se hizo caso omiso a su estatus médico y se determinó incorrectamente que la residencia propuesta no era viable. En contraste, plantea que cumple con todos los requisitos reglamentarios para recibir el privilegio de libertad bajo palabra, especialmente cuando el DCR recomendó que, para su reinserción, se beneficiara de más privilegios en la libre comunidad.

En primer lugar, según arguye, la JLBP erró al basar su decisión en la falta de oferta de empleo cuando, según prescribía el derogado Reglamento Núm. 9232, *supra*, el incumplimiento con ese criterio no sería razón suficiente para negar el privilegio. A su vez,

señala que la falta de oferta de empleo se debió a su condición médica.

En segundo lugar, resalta que la JLBP decretó incorrectamente que la residencia propuesta no era viable. Para él, como ya recibe el beneficio del programa Pases Familiares en dicha localización – lo cual hace sin custodia, aceptado por la comunidad, sin quejas, demostrando ajustes positivos y descrito como un buen vecino – debemos interpretar que el DCR determinó preliminarmente que el hogar era viable.

En tercer lugar, aduce que la distancia entre las residencias no formó parte del expediente y, por lo tanto, la JLBP violentó el debido proceso de ley que le cobija porque tomó en consideración información extrínseca al procedimiento.

En apoyo del dictamen, la JLBP reitera que la denegatoria se fundamentó correctamente en la cercanía de la residencia propuesta respecto al hogar de una víctima del delito cometido por el recurrente y en la carencia de oferta de empleo. Por eso, advierte que el recurrente no contó con un plan de salida estructurado en dos (2) de sus tres (3) áreas.

Por un lado, esboza que, como se evidencia en un Anejo confidencial sometido junto a su alegato en oposición al recurso de epígrafe, la distancia entre la residencia propuesta por el señor González Collazo y la residencia de una víctima del delito por el cual fue convicto impide la concesión del privilegio según solicitado. Según arguye, la JLBP conserva discreción para evaluar la residencia propuesta, según sus propios criterios reglamentarios, los cuales le facultan tomar en consideración la distancia entre la residencia propuesta y la vivienda de una víctima del delito. De la mano con esto, señala que tanto la Ley Núm. 118-1974, *supra*, como el Reglamento Núm. 9603, *supra*, prohíben la divulgación de la dirección de la residencia de la víctima de delito en cuestión,

estableciendo que ni el confinado, ni su representación legal tendrán acceso a esa información.

Por otro lado, aduce que el recurrente no presentó un diagnóstico o certificación de por una autoridad competente para demostrar la incapacidad física que, según este, justifica su falta de oferta de empleo. A esto añade que el recurrente tampoco hizo gestiones adicionales para obtener la oferta.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso, en correcta práctica adjudicativa apelativa, resolvemos que la JLBP no incidió en el error señalado y determinó correctamente no conceder el privilegio de libertad bajo palabra al señor González Collazo. Un examen sosegado de los anejos sometidos por la JLBP, los cuales incluyen información confidencial sobre la dirección residencial de una víctima del delito por el cual fue convicto el señor González Collazo, arroja que la residencia propuesta por el recurrente se encuentra a poca distancia del hogar de la víctima. De hecho, se encuentra a mucha menos distancia de las treinta (30) millas establecidas como criterio de elegibilidad a considerar por el Reglamento Núm. 9603, *supra*.[19] Por eso, la JLBP, dentro de su discreción, consideró dicho criterio y, dada la información provista, determinó que no correspondía conceder el privilegio, según solicitado. No intervendremos con el ejercicio de la JLBP de su discreción, especialmente cuando está basado en la información provista. La determinación no abusó de la discreción conferida a la JLBP por la Ley Núm. 118-1974, *supra*, ni el Reglamento Núm. 9603, *supra*, ni adolece de arbitrariedad o errores en su conclusión de derecho.

---

[19] Cabe destacar que el criterio según esbozado en el Reglamento Núm. 9603, *supra*, es más preciso y claro que aquel delimitado en el derogado Reglamento Núm. 9232, *supra*, tanto y en cuanto coloca una distancia exacta, lo cual no estaba contemplando en el reglamento derogado.

De paso, cabe destacar que la Ley Núm. 118-1974, *supra,* prohíbe que el convicto o su representación legal tengan acceso a la información confidencial relacionada a la víctima. Tal disposición es reproducida en el Reglamento Núm. 9603, *supra.* Así, el derecho del recurrente al debido proceso de ley, enmarcado dentro del procedimiento informal para la concesión del privilegio de libertad bajo palabra, no incluye el acceso a esta información confidencial, la cual hemos tomado en cuenta en esta etapa de los procedimientos.

Por otra parte, resulta importante reseñar que la JLBP no basó su denegatoria únicamente en la falta de oferta de empleo, sino que complementó dicha carencia con la inviabilidad de la residencia propuesta por el recurrente. Todavía más, actuó entro de sus facultades, toda vez que el Art. 3-D de la Ley Núm. 118-1974, *supra,* y el inciso (8)(e) de la Sección 10.1(B) del Art. X del Reglamento Núm. 9232, *supra,* permiten a la JLBP tomar en cuenta cualquier otra consideración meritoria que estime pertinente dentro de los méritos del caso individual.

Por todo lo anterior, corresponde confirmar la *Resolución* recurrida, toda vez que es correcta en derecho.

**V.**

Por los fundamentos pormenorizados, se *confirma* la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones